ANTHONY *v.* COUNTY OF JASPER.

1. The act of the General Assembly of Missouri, entitled "An Act to provide for the registration of bonds issued by counties, cities, and incorporated towns, and to limit the issue thereof," approved March 30, 1872, applies to bonds issued under the act approved March 23, 1868, commonly known as "The Township Aid Act."

2. The said act of March 30, 1872, declares that before a municipal bond thereafter issued shall obtain validity or be negotiated, it shall be presented to the State auditor, who shall register it and certify by indorsement that all the conditions of the laws and of the contract under which it was ordered to be issued have been complied with. *Held,* that unless the bonds are so indorsed, a holder of them cannot maintain an action thereon.

3. A township in Missouri voted to subscribe for stock in a railroad company. The proper county court, March 28, 1872, made the subscription, and, June 4, ordered that the bonds in payment therefor be issued. They were issued in October following, but bore date the day of the subscription. They were sealed with the seal of the court, and signed by the clerk and by A., as presiding justice, although the latter did not become such until October. Neither the county court nor the other justice thereof consented to A.'s act. The bonds were not registered, nor was the certificate of registration required by said act of March 30, indorsed thereon. In a suit by B., a holder for value, upon the bonds, — *Held,* 1. That he was charged with notice that A. was not presiding justice at the time they bear date. 2. That the bonds being signed by A. was equivalent to notice that they were not in fact issued before the passage of said act, and that they are consequently void.

4. *Town of Weyauwega* v. *Ayling* (99 U. S. 112) distinguished.

ERROR to the Circuit Court of the United States for the Western District of Missouri.

The facts are stated in the opinion of the court.

The case was argued by *Mr. John B. Henderson* and *Mr. Joseph Shippen* for the plaintiff in error, and by *Mr. Alexander Graves, contra.*

*Mr. E. J. Montague* and *Mr. Fillmore Beall* filed printed arguments for the defendant in error.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

This is a suit upon interest coupons originally attached to bonds issued under the Township Aid Act of Missouri, and presents the following facts: —

On the 10th of February, 1872, the township of Marion, in

Jasper County, upon a call duly made under the law, voted to subscribe $75,000 to the stock of the Memphis, Carthage, and Northwestern Railroad Company upon certain conditions, and on the 28th of March following the county court made the subscription on the terms and subject to the conditions specified.

On the 30th of March in that year an act was passed by the General Assembly of Missouri, entitled " An Act to provide for the registration of bonds issued by counties, cities, and incorporated towns, and to limit the issue thereof."    Sect. 4 of that act is as follows : —

" Before any bond hereafter issued by any county, city, or incorporated town, for any purpose whatever, shall obtain validity, or be negotiated, such bond shall first be presented to the State auditor, who shall register the same in a book or books provided for that purpose in the same manner as the State bonds are now registered, and who shall certify by indorsement on such bond that all the conditions of the laws have been complied with in its issue, if that be the case, and also that the conditions of the contract under which they were ordered to be issued have also been complied with, and the evidence of that fact shall be filed and preserved by the auditor. But such certificate shall be *prima facie* evidence only of the facts therein stated, and shall not preclude or prohibit any person from showing or proving the contrary in any suit or proceedings to test or determine the validity of such bonds or the power of any county court, city, or town council, or board of trustees, or other authority to issue such bonds, and the remedy by injunction shall also lie at the instance of any tax-payer of the respective county, city, or incorporated town to prevent the registration of any bonds alleged to be illegally issued or founded under any provision of this act."

On the 4th of June, 1872, the county court ordered that $50,000 of the bonds which had been voted should be issued, that the clerk have them registered according to law, and, when registered, that they be deposited in escrow with some responsible banker in St. Louis.

John Purcell was the presiding justice of the court in March. He continued in office until September, 1872, when he resigned, and R. S. Merwin was appointed in his place Oct. 21, 1872. The bonds now in question were sealed with the seal of the court, affixed by the clerk, and signed by Merwin, as presiding

justice, and by the clerk in October, 1872, but antedated as of March 28. Merwin delivered them during the same month, with the first two coupons cut off, to the Union Savings Bank of St. Louis, for the use of Edward Burgess, a contractor for building the road. In November, Burgess sold them to one Wilson at fifty-five cents on the dollar, and the bank gave them up to the purchaser on his order. Neither the other justice of the county court, nor the court as a court, consented to what was done by Merwin, and the railroad company has never fully complied with the conditions of the vote authorizing the issue of the bonds. No registry of the bonds was ever made, as required by the act of March 30, 1872, and they did not have upon them the certificate of registration. Anthony, the plaintiff below, was a purchaser for value of the bonds from which the coupons sued on were cut, and without any notice that they had been antedated, or were in any respect irregular or invalid.

The Circuit Court, on this state of facts, gave judgment against Anthony, and he brought this writ of error.

All the questions presented in the argument of this case were disposed of in *Douglass* v. *County of Pike* (*supra*, p. 677), except such as arise under the act of March 30, 1872. That act, it is claimed, renders the bonds invalid, because they were not registered and had no certificate of registry on them. Against this it is urged: —

1. That the act does not apply to bonds issued under the township aid law; and,

2. That if it does, the county is estopped from denying that these bonds were actually issued on the day they bear date.

The first objection is, as we think, untenable. It does not appear to have been taken or considered below. While the bonds are township bonds, in the sense that they are payable out of taxes levied on the property in the township which voted them, they were issued by the county. The county court, which represented the county in its corporate capacity, made the subscription voted by the township, and issued the bonds in the name of the county. Under the same authority the necessary taxes are to be levied on the property in the township, and from moneys obtained in this way the county

treasurer is to pay the bonds and coupons as they mature. The bonds on their face acknowledge an indebtedness of the county " for and on account of " the township. Since townships have no corporate organization of their own they act through the county, which, for this purpose, represents them as, under other circumstances, it does the people of the whole county.

The act in question is not confined to the bonds *of* counties, but embraces all *issued* by counties. As there can be no township bonds except they are issued by counties, it seems to us that they come within the descriptive words used in the fourth section, and we have been unable to find any thing in the other parts of the act manifesting an intention to give these words any other than their usual and ordinary signification. The object of the new legislation undoubtedly was to guard against unauthorized issues of this class of public securities. For this purpose a new policy was adopted by the State. The evil which the General Assembly had in view affected township bonds, as well as those of counties, cities, or towns. In fact, as ordinarily the same officers put out the township bonds that did those of the county, it is impossible to discover any good reason for guarding one against frauds and mistakes rather than the other. The records of the county court should contain an account of all that has been done in this way by that body for the townships, and the chief financial officer of the county can as easily furnish the State auditor with a statement of these obligations as he can of those of the county at large. When the State auditor certifies to the county court the amount required during the next year to meet maturing coupons and costs and expenses, the special tax can be levied by the county court, under the township aid law, as amended in 1871 (Wagner's Stat. 331, sect. 52), on the real estate and personal property in the township for whose account the bonds were issued. No embarrassment can possibly arise in this particular, for there is no such conflict between the two statutes as to produce a repeal by implication. The registration statute is supplementary only to that under which the bonds were originally issued.

This brings us to consider the question of estoppel. There

can be no doubt that it is within the power of a State to pre-
scribe the form in which municipal bonds shall be executed in
order to bind the public for their payment. If not so executed
they create no legal liability. Other circumstances may exist
which will give the holder of them an equitable right to recover
from the municipality the money which they represent, but he
cannot enforce the payment, or put them on the market as
commercial paper. The act now in question is, we think, of
this character. It in effect provides that no bond issued by
counties, cities, or incorporated towns shall be valid, that is to
say, completely executed, until it has been countersigned or
certified in a particular way by the State auditor. For this
purpose, after being executed by the corporate authorities, it
must be presented to that officer, and he must inquire and
determine whether all the requirements of the law authorizing
its issue have been observed, and whether all the conditions of
the contract in consideration of which it was to be put out
have been complied with. To enable him to do this, evidence
must be submitted which he is required to file and preserve.
If he is satisfied, the registry is made, and the requisite certifi-
cate indorsed on the bonds. This being done the execution
of the bond is complete, and, under the law, it may then be
negotiated, that is to say, put on the market as valid commercial
paper. When the certificate is found on the bond the pur-
chaser need not inquire whether what has been certified to is
true. As against a *bona fide* holder the public is bound by
what its authorized agents have done and stated in the pre-
scribed form.

Dealers in municipal bonds are charged with notice of the
laws of the State granting power to make the bonds they find
on the market. This we have always held. If the power
exists in the municipality, the *bona fide* holder is protected
against mere irregularities in the manner of its execution, but
if there is a want of power, no legal liability can be created.
When the bonds now in question were put out, the law re-
quired that to be valid they must be certified to by the auditor
of state. In other words, that officer was to certify them be-
fore their execution was complete, so as to bind the public
for their payment. We had occasion to consider in *McGarra-*

*han* v. *Mining Company* (96 U. S. 316) the effect of statutory requirements as to the form of the execution of patents to pass the title of lands out of the United States, and there say: " Each and every one of the integral parts of the execution is essential to the validity of a patent. They are of equal importance under the law, and one cannot be dispensed with more than another. Neither is directory, but all are mandatory. The question is not what, in the absence of statutory regulations, would constitute a valid grant, but what the statute requires." The same rule applies here. The object to be accomplished is the complete execution of a valid instrument, such as the law authorizes public officers to put out and bind for the payment of money the public organization they represent. For this purpose the law has provided that the instrument must not only be signed and sealed on behalf of the county court of the county, but it must be certified to or countersigned by the auditor of state. Of this law all who deal in the bonds are bound to take notice.

In order to recover in this case it became necessary for the plaintiff to prove that the bonds from which the coupons sued on were cut had been executed according to law. He did prove that they were signed by the presiding justice and clerk of the court, and were sealed with the seal of the court. This, before the act of March 30, 1872, would have been enough, but after that more was necessary. The public can act only through its authorized agents, and it is not bound until all who are to participate in what is to be done have performed their respective duties. The authority of a public agent depends on the law as it is when he acts. He has only such powers as are specifically granted; and he cannot bind his principal under powers that have been taken away, by simply antedating his contracts. Under such circumstances, a false date is equivalent to a false signature; and the public, in the absence of any ratification of its own, is no more estopped by the one than it would be by the other. After the power of an agent of a private person has been revoked, he cannot bind his principal by simply dating back what he does. A retiring partner, after due notice of dissolution, cannot charge his firm for the payment of a negotiable promissory note, even in the hands of

an innocent holder, by giving it a date within the period of the existence of the partnership. Antedating under such circumstances partakes of the character of a forgery, and is always open to inquiry, no matter who relies on it. The question is one of the authority of him who attempts to bind another. Every person who deals with or through an agent assumes all ths risks of a lack of authority in the agent to do what he does. Negotiable paper is no more protected against this inquiry than any other. In *Bayley* v. *Taber* (5 Mass. 285), it was held that when a statute provided that promissory notes of a certain kind, made or issued after a certain day, should be utterly void, evidence was admissible on behalf of the makers to prove that the notes were issued after that day, although they bore a previous date.

It matters not that when the bonds were voted the registration law was not in force. Before they were issued it had gone into effect. It did not change in any way the contract with the railroad company. The company was just as much entitled to its bonds when it complied with the conditions under which they were voted after the law as it could have been before. All the legislature attempted to do was to provide what should be a good bond when issued. There was nothing changed but the form of the execution.

Purchasers of municipal securities must always take the risk of the genuineness of the official signatures of those who execute the paper they buy. This includes not only the genuineness of the signature itself, but the official character of him who makes it. This plaintiff is charged with notice of the fact that Merwin was not the presiding justice of the county court until October, 1872, and that he could not have signed the bonds in his official capacity until that time. Had he signed them in March, he could not have bound the township for their payment. This is equivalent to notice that they were not in fact issued before March 30, and that consequently they were not valid because not certified by the auditor of state.

This case is entirely different from *Town of Weyauwega* v. *Ayling* (99 U. S. 112), where we held the town was estopped from proving that the bonds were actually signed by a former

clerk after he went out of office; because the clerk in office adopted that signature as his own when he united with the chairman in delivering the bonds to the railroad company, pursuant to the vote of the town.  There the bonds were not only complete in form at the time they bore date, but when they were actually issued as genuine by the proper agents, one of whom was the clerk who should have signed them.  Here they were not actually complete in form when they were issued, and it was only by a false date inserted by one of the two agents required by law to unite in their execution, and without the knowledge or consent of the other, who never acted at all, that they were apparently so.  They were never in a condition to be issued, and were never in fact issued by the proper authorities.  They were in legal effect forged.

It follows that the judgment of the Circuit Court was right, and it is consequently

*Affirmed.*

MR. JUSTICE CLIFFORD, MR. JUSTICE SWAYNE, and MR. JUSTICE STRONG dissented.