No. 10,768.

THE STATE EX REL. JULES C. DENIS ET AL. VS. JOSEPH A. SHAKSPEARE, MAYOR.

1. A right to office can not be said to be involved in a *mandamus* proceeding which has for object the revocation of an alleged illegal order of removal of certain police commissioners of the City of New Orleans, and in which the Mayor is made the respondent.   An appeal taken from a judgment therein rendered is not returnable within ten days, under the provisions of Section 7 of Act 45 of 1870, extra session.

# NEW ORLEANS, JANUARY, 1891. 93

State ex rel. Denis et al. vs. Mayor.

2. As, under the terms and provisions of Act 156 of 1888, the police board is composed of six commissioners, four of whom are necessary to constitute a quorum for the transaction of business, and all vacancies which are occasioned in said board by death, resignation or removal from office must be filled by the board for the unexpired terms of such commissioners; and as four of the six commissioners, alleging themselves to have been illegally removed by the Mayor, whereby a quorum is broken, and their vacancies can not be filled by said board, and it can not receive or disburse an appropriation of $185,000, already made, for the benefit of the police department, unless the illegal act of the Mayor is annulled and revoked, for which relief they pray, this court has jurisdiction *ratione materiæ*.

3. Grounds assigned in the District Court, for the want of authority in the judge thereof to entertain jurisdiction of and to decide a case before it, are, if sustained therein, not proper grounds to be assigned in this court for the dismissal of an appeal therefrom, though they might be for the affirmance of said judgment.

---

1. *Mandamus* may be directed to corporations established by law, to compel them to receive and restore to their functions such of their members as they shall have refused to receive, and whom they shall have removed without sufficient cause.

2. The District Courts have jurisdiction and power to examine into and decide whether an officer of a municipal corporation has been removed from office, on charges that are sufficient in law to warrant removal proceedings, and whether the proceedings have been legally conducted, in case the law authorizes a removal, only for due cause.

3. The provisions of Section 4 of Act 63 of 1888 do not contravene Articles 92, 196 and 200 of the Constitution, or either of them.

4. During the pendency of a *mandamus* proceeding, to test the validity of an act of removal from office of relators, by the Mayor, commissions intermediately issued to other persons, can not be given the effect of extinguishing relator's cause of action.

5. In case charges have been preferred against several municipal officers at one and the same time, who are tried together, and are removed from office by one and the same order, they have sufficient identity and mutuality of interest to authorize them to be joined as relators in one and the same *mandamus* proceeding.

6. If, upon an examination of the charges which are preferred against certain police commissioners, it is found that they do not, in law, amount to malfeasance in office, the order of the Mayor or of the City of New Orleans removing them from office will be revoked, and they will be restored to their functions and franchises.

APPEAL from the Civil District Court for the Parish of Orleans. *Ellis, J.*

---

· F. P. Poché, E. W. Huntington and J. Numa Augustin for the Relators and Appellants:

The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws whenever he receives an injury. Marbury vs. Mason, 1 Cranch, 163.

State ex rel. Denis et al. vs. Mayor.

All courts shall be open and every person for injury done him in his rights, lands,. goods, person or reputation, shall have adequate remedy by due process of law, and justice administered without denial or unreasonable delay. Con. of' La., Art. 11; State ex rel. Mayor vs. Judge, 35 An. 637; Gas Company vs. Gas Company, 27 An. 138.

The power conferred to the mayor of a city to remove certain officers for certain enumerated cause, and after hearing evidence, is not an absolute or discretionary power. In such a case the mode and form of proceeding, rulings on points of law, and the sufficiency in law of the charges brought, are liable to judicial review, and mandamus is the proper remedy therefor. C. P., Art. 835, 6 La. 595; 5 Martin 271; High Extr. Leg. Remedies, Sec. 69; Dillon Mun. Corp.,. Sec. 255; 9 Wis. 254; 15 Pa. Stat. 251; 32 Ind. 74; 1 Dutcher 536; 21 Fla. 652; 3 Henning and Mumford, p. 1.

Pending an issue in court involving the question of a vacancy *vel non* in an office, no valid appointment can be made to such an office. In a mandamus proceeding the respondent can not inject in his return an issue foreign for the end for which the writ applies. 29 An. 401. Officers who had been removed by one and the same judgment, under one and the same charge for one and the same offence, can and must join in an action intended to annul the judgment of removal.

The Mayor of New Orleans can not constitutionally be clothed with judicial powers other than as a committing.

In proceedings for a motion the accused must have a reasonable time to prepare their defence. Dillon, Sec. 250. And all witnesses in the matter should be sworn. High, Sec. 68.

Mere error of judgment by a corporation doing acts *ultra vires* is not malfeasance.

---

*W. B. Sommerville*, Assistant City Attorney, and *Carlton Hunt*,. City Attorney, for the Respondent and Appellee:

In a proceeding by mandamus to compel the Mayor of the city of New Orleans to rescind the order made by him to remove relators from the office of Commissioners of the Police Board of the city of New Orleans, the Civil District Court for the parish of Orleans is without jurisdiction *ratione materiæ* and *personæ*. Con., Art. 11; 15 Peters 449; 24 An. 214; 34 An. 735; 35 An. 639; 2 An. 543; 2 La. 395; 38 An. 923; 40 An. 852; 39 An. 765; 19 An. 210; 26 An. 120; 29 An. 243; 33·An. 446; 34 An. 280; 7 M. N. S. 1; 35 An. 1082; Law Reporter for 1883, No. 15; 35 An. 934.

The petition of relators sets forth no cause of action for a mandamus. C. P., Arts. 867-869; High on Extr. Leg. Remedies, Sec. 67; 5 M. 271.

The Governor having, in conformity with Articles 258, 72 and 69 of Constitution,. and with Section 2606 of the Revised Statutes of 1870, filled the vacancies in the Police Board created by the removal of relators, their petition, which alleges that there are vacancies in the places of Commissioners of the Police Board,. gives them no cause of action. Con., Arts. 258, 61 and 72.

The relators having been appointed for separate terms and severally Police Commissioners, can not be joined in one action against respondent. 12 An. 74; 14 An.. 177; 39 An. 1031.

Under Section 4 of Act 63, the Mayor only has the right to call meetings of the· Police Board. The calling of the meeting by the president *pro tem.* of the board is an act of malfeasance.

State ex rel. Denis et al. vs. Mayor.

The adoption subsequently at a regular meeting of the Police Board of the minutes of the meeting precedently held and irregularly called is likewise an act of malfeasance on the part of the commissioners taking part therein.

The assumption by the president *pro tem.* in the presence of the Mayor of the right to put the vote on the adoption of the minutes is malfeasance also.

What malfeasance is, was stated in the Lazarus case. Corrupt motive is not required to be present to constitute malfeasance. Malfeasance is " evil doing, ill conduct, the doing of what ought not to be done." 6 Met. Rep. 340; 12 Met. Rep. 112; 39 An. 142; 1 Bay 356; 2 Bay 106.

ON MOTION TO DISMISS.

The opinion of the court was delivered by

WATKINS, J.   Condensed, the several grounds assigned for the dismissal of the plaintiffs' appeal are:

1. That, this suit involving a right of occupancy and enjoyment of a public office, the appeal should have been made returnable to this court within ten days from the date of the judgment appealed from, whereas the order of the court *a qua* made it returnable on the first Monday of November, 1890, long after the expiration of that delay.

2. That this court is without jurisdiction of this cause *ratione materiæ* because there is not involved therein an amount or matter in dispute in excess of $2000.

3. The alleged removal of relators having been effected under the authority of Section 4 of Act 63 of 1888, duly authorizing such a removal for specified offences and without subjecting the respondent's act in such case to judicial control, *courts* are without authority in the premises; and therefore this court is without jurisdiction to render any judgment in this cause.

I.

Section 7 of Act 45 of 1870, Extra Session, is invoked as the law controlling appeals to this court, in cases like the present one.

That act regulates, amongst other things, appeals to this court. The section relied upon by counsel for the respondent is couched in these words, viz:

" That in all cases *in which the right to office is involved,* and an appeal is taken from the judgment of the lower court, it shall be returnable in ten days after judgment of the lower court," etc. (Italics are ours.)

The question then is, whether there is, in this suit, a "right to office" involved; for, if there is not, the appeal was properly made returnable here, under Section 1 of that act.

A *right to office* can be said to be *involved in a suit*, only when there is a contest in respect to the *title* to an office. The law has made special provision for such contestations, in the intrusion into office statutes, which have been, from time to time, enacted.

One was enacted in 1868, which declared that an action may be brought by the Attorney General, or a district attorney, in the name of the State, against any person "who shall usurp, intrude into, or unlawfully hold, or exercise, *any public office or franchise within this State,*" etc. Sec. 1, Act 58 of 1868.

It further provides, that whenever the defendant in such suit shall be adjudged "guilty of usurping, or intruding into, or unlawfully holding any office, franchise, or privilege, judgment shall be rendered, that such defendant be excluded from such *office, franchise, or privilege,*" etc. (Our italics.) Ibid. Section 10.

Sections 1 and 10 of Act 156 of 1868 are the same as those of the cited sections of Act 58.

These intrusion-into-office statutes furnish an *only and exclusive* mode of removing an intruder from "any public office or franchise in this State;" and it is in this mode alone that a disputed title to a "public office or franchise" can be tested; and it necessarily follows that only in such a suit can a "right to office be involved.

An intrusion-into-office suit must be brought *against* the person intruding into the contested office. This is essential.

The case before us is not such a suit, as the petition contains no averment that any one has unlawfully intruded into, or has attempted to intrude into, the offices to which relators respectively allege themselves to be entitled. It is strictly and technically a *mandamus* proceeding, taken, on the part of the relators, against the respondent in his official capacity as Mayor of the City of New Orleans, in which the relators allege themselves to be police commissioners, duly appointed by competent authority, and to have been unlawfully interfered with in the exercise and performance of the duties and functions thereof by the respondent; and demand the revocation of his order in the premises, and the restoration of the *status quo.*

The prayer of the petition is as follows, viz:

"Wherefore, relators pray that a writ of *mandamus* issue directed to Joseph A. Shakspeare, Mayor of the City of New Orleans, ordering and commanding him to rescind the order made by him of the 7th of July, 1890, purporting to remove your relators and restore them to their respective offices and functions, or to show cause to the contrary."

We think it is manifest that this is not a suit "in which the right to office is involved," in the sense of the law of 1870, and that the appeal of relators was properly made returnable here on the first Monday of November, 1890, as it was.

## II.

Has this court jurisdiction *ratione materiæ?* As we have just ascertained that this is *not* a suit in which a right to office is involved, it does not appear to be a jurisdictional question whether or not there is any pay, compensation or salary attached to the offices of police commissioner. But as we have shown in the preceding paragraph, the *gravamen* of relator's complaint is the nullity of respondent's order of removal and the consequences thereof.

The averments of the relator's petition are substantially to the effect that, as, under the statute in question, the police board is composed of six commissioners, four of whom are necessary to constitute a quorum for the transaction of any business; that all vacancies occasioned in the board by "death, resignation or removal   *   *   * shall be filled by said board for the unexpired terms of said commissioners;" that by the respondent's act, if it should not be revoked, in the attempted removal of *four* of the six commissioners, the autonomy of the board would be destroyed, and it rendered incapable as such of filling the vacancies caused by their removal; and that the law creating the board would be, in effect, paralyzed by the respondent's act. Hence, the relators, composing a majority of the commissioners, have a right and an interest in maintaining the law in its integrity, and in keeping it in force and in putting its important machinery in motion.

Their petition, then, specifically charges that "by his aforesaid arbitrary conduct the said Mayor has effectually paralyzed for nearly three years the execution and the operation of said act by the Legislature, and will successfully suspend for that length of time the effect

7

of and all obedience to the decision of the honorable the Supreme
Court of Louisiana, rendered in the case entitled ' The State ex rel.
Nicholls, Governor, et al., vs. Joseph A. Shakspeare, Mayor, et al.,'
reported in 41st of Annuals at p. 156.''

The whole question may be summarized thus: That the action of
the respondent has by the removal of four members of the board at
one time left it without a quorum; that the vacancies can not be
filled '' by said board '' for the unexpired terms of the removed
commissioners, and the whole machinery of the police department
will be for the full period of three years left at a standstill.

From this condition of things it is alleged that serious consequences
will flow to the city and to the public service.   For instance, that
during the *interregnum* thus created in the administration of the
police department '' no city or *other officer* will have a legal right
*to receive and disburse the sum of $185,000 appropriated for the police
department by the City Council for the current year;* and that the ap-
propriations to be made for the same purpose for the years 1891 and
1892 may not be less than $150,000 for each of said years,'' etc.

The object of this suit is to have the acts of the Mayor in thus at-
tempting to paralyze the Police Board and thwart the execution of
the police statute declared illegal, and the relators restored to the
full exercise of their franchises, one of which is the receipt and dis-
bursement of the *existing* appropriation of $185,000 in behalf of the
police department, and which can not be legally received or dis-
bursed by any *other* officer or authority in the meanwhile.

At this juncture we can not say—are not called upon to decide—
whether the *actual* condition of things *is* as it is alleged to be, but
whether the alleged condition of things confers jurisdiction on this
court to so decide.

These averments are substantiated in law, for Section 2 of the
statute under consideration provides '' that said commissioners shall
be elected by the Common Council of the city of New Orleans, two
for the term of four years, two for the term of eight years, and two
for the term of twelve years.''   It further provides that, '' in case
of death, resignation or *removal from office* of any of said commis-
sioners, the vacancy shall be filled by *said board* for the *unexpired
term* of said commissioner; and upon the *expiration of the terms* of
such commissioners, the offices shall be filled by *election by said
Common Council for a term of twelve years, as above stated.*''

Section 3 provides that "not less than four commissioners shall constitute a quorum." It thus appears that a vacancy occasioned by the removal of a commissioner from office " *shall be filled by said board,*" but when a vacancy occurs by reason of the expiration of a· commissioner's term of office, it " shall be filled by election by the Common Council."

There was manifestly ample warrant in the statute for the averments that were made, viz: That by the action of respondent in removing four commissioners at one time the board was left without a quorum; that without a quorum the board could take no action in respect to filling the vacancies occasioned by relators' removal; and that the Common Council was without power to fill said vacancies.

It being averred, as a matter of fact, that there had been already made by the Common Council an appropriation of $185,000 for the police department, the absence of a quorum of the board precluded its receipt or disbursement. On this hypothesis the alleged interregnum was complete, and the affairs of the police board were effectually brought to a standstill. It is obvious that relators have, as a majority of said board, and representing a quorum of its members, an actual, present interest in putting the machinery of the law in motion, to the end that the large appropriation already made may be received and disbursed to the police force of the city.

In State ex rel. Nicholls, Governor, vs. Shakspeare, Mayor, 41 An. 156, the jurisdiction of this court was upheld and maintained, on the ground that the enforcement of the law contemplated an *ultimate* appropriation of $150,000 per annum for the alimony of the police force, although there was *then* no board *in esse*, and no fund for disbursement in existence. For a very much stronger reason should the jurisdiction of this court be maintained in the instant case on the averment that the Mayor's illegal acts threaten to emasculate the *existing* board of *all* authority to act, and thus annihilate it and prevent the receipt or disbursement of an *existing* appropriation of $185,000. The issues presented in this case are substantially the same as those in the Nicholls case.

This court has appellate jurisdiction of this cause *ratione materiæ*.

### III.

The third ground assigned for the dismissal of the appeal is essentially the same, in purport if not in terms, as the exceptions

which were urged in the court below, against its authority to grant the relief prayed for; and same were, on the trial, sustained in the court below. In his reasons for judgment the judge *a quo* says, after making a statement of the case:

"There is no provision in Act 63 of 1888, or elsewhere in the law of this State, which subjects to judicial review or control this power of removal which said Section 4 confers upon the Mayor."

He then gives a *résumé* of authority on the question, and concludes thus:

"From these authorities I conclude that the power conferred on the Mayor by said Section 4 of the Act of 1888 is absolute, and that his act in removing the relators can not be questioned or interfered with by the courts, unless, as the relators contend, that section is violative of the organic law, and *ergo* void."

Taking these reasons as the foundation of his judgment, and, necessarily, an appeal therefrom presents the question of the correctness of the judgment. Therefore, while, as matter of law, the exceptions tendered may have been good and properly sustained in the court *a qua*, same may, on appeal, be considered and found sufficient for an affirmance of the judgment appealed from; yet it is a *non sequitur* that they furnish grounds for the dismissal of the appeal. For in order to determine that question we must, of necessity, assume jurisdiction of the cause. The appeal invites this court to decide that the District Court erred in sustaining those exceptions, and appellee meets this invitation with a motion to dismiss the appeal, because the District Judge properly sustained them. Obviously, this court can not, in the exercise of appellate jurisdiction, make any order or render any judgment other than such order or decree as the judge below should have rendered. An appellate court exercises just such power as the court of first instance possessed, but in a different way; and the fact that the court below exercised it properly is no ground for the dismissal of the appeal, while it is for the affirmance of the judgment.

This ground furnishes no cause for the dismissal of the appeal.

Our conclusion is that none of the objections are well taken, and that same should be overruled.

And it is so ordered.

Mr. Justice Breaux concurs in the decree.

NEW ORLEANS, JANUARY, 1891.                101

State ex rel. Denis et al. vs. Mayor.

## ON THE MERITS.

In our recent opinion in this cause, on motion to dismiss appeal, we found it necessary to make a concise synopsis of relators' cause of action, and it may be thus paraphrased:

As strictly and technically a *mandamus* proceeding taken on the part of the relators as members of the Board of Police Commissioners of the city of New Orleans against the respondent in his official capacity as Mayor of the city of New Orleans, alleging themselves to have been unlawfully interfered with in the exercise and performance of the duties and functions of their said offices and franchises by the said respondent; and they demand the revocation of the respondent's order in the premises and the restoration of the *status quo* as it was when his illegal order was made and promulgated; and they especially pray for the rescission of his order of date July 7, 1890, purporting to remove them from their said offices and functions, and for their restoration thereto.

As a foundation of their complaint, relators charge that as under the statute creating the Board of Police Commissioners it is composed of six commissioners, four of whom are necessary to constitute a quorum for the transaction of any business; that all vacancies occasioned in the board by death, resignation or removal of any of its members shall be filled by said board for the unexpired terms of such commissioners; that by the respondent's act in the attempted removal of *four* of the six commissioners at one and the same time the autonomy of the board would be destroyed, and it rendered incapable of filling the vacancies caused by said removal; and that the law creating the board would be in this manner and in effect paralyzed by the respondent's act.

Hence they allege that they have an interest, as a majority of said commissioners, in the maintenance of the law in its integrity, and in keeping its important machinery in motion.

The object, primarily, of this proceeding is to have the acts and orders of the respondent Mayor declared illegal and void, and the relators restored to the full and complete exercise of their franchises and functions as members of said Board of Police Commissioners.

The authority for the acts and proceedings of the respondent rests upon the provisions of Section 4 of Act 63 of 1888, it being "an act creating a police board for the City of New Orleans, and defining its

powers." That section provides that "the persons severally appointed commissioners of the police board   *   *   *   may at any time be removed by the Mayor of the City of New Orleans for high crimes, malfeasance, or misdemeanors; for incompetency, for corruption, favoritism, extortion, or oppression, or for gross misconduct, or habitual drunkenness; *provided*, that in all cases where charges are made against a commissioner, he shall have an opportunity to present evidence in his behalf."

The grounds on which the relators charge that the respondent's acts are null and void are:

1. That the quoted section of the said statute vests, or attempted to invest, the Mayor with judicial functions in violation of Article 92 of the Constitution; and that said section of the statute further violates Articles 196 and 201 of the Constitution, in that it proposes to regulate the mode of removing municipal officers, contrary to and diametrically in contradistinction of, the mode therein required.

2. That relators were denied reasonable time to prepare their defence to the charges preferred.

3. That during the progress of their trial various witnesses were heard without being sworn as the law requires.

4. That the charges preferred against them do not in law amount to malfeasance in office.

To the relators' petition respondent urges several exceptions, viz:

1. That the Civil District Court is without power to issue the writ of *mandamus*, because the law has vested that court with no jurisdiction in the premises, and the act of the Mayor is final and not subject to judicial review.

2. No cause of action.

3. That relators' right of action has been abated and extinguished by the issuance of commissions by the Governor to other parties *in their places and stead.*

4. Misjoinder of parties.

Cumulated with these exceptions is an answer, in which the regularity and legality of the Mayor's acts are averred.

A trial was had on these pleadings and issues, and the judge *a quo*, concluding that neither the police statute nor any other law of this State "subjects to judicial review or control" the Mayor's power of removal, declined to take jurisdiction of the cause and sustained respondent's first exception.

But the case was tried upon its merits as well as upon the excep-
tions, and upon a full review of all the testimony offered *pro* and *con*. by
the parties.   From the judgment thus rendered the relators have
appealed; and the whole case is before us.

### I.

This suit is an *original* proceeding, instituted in the only *competent*
court of *original* jurisdiction known to the Constitution and laws of
this State wherein the issues involved could be judicially inquired
into and determined; and Article 201 of the Constitution declares
that ·"for any of the causes enumerated in Article 196 district at-
torneys, clerks of courts, sheriffs, coroners, recorders, justices of the
peace, and all other parish, municipal and ward officers, shall be
removed by judgment of the District Court of the domicil of such
officer " (in the parish of Orleans the Civil District Court), etc.

The provisions of Article 196 of the Constitution being identical
with those of the quoted section of the police statute, it would seem
reasonable that the Civil District Court should have, primarily, juris-
diction to try a suit for the amotion of such municipal officers as the
relators are.

But the respondent's contention is, that the police statute having
conferred upon him, as the Mayor of the city, the jurisdiction and
authority to entertain such charges against Police Commissioners,
that same is necessarily *complete* and *exclusive;* and for the same
reason the Civil District Court is divested and deprived of jurisdic-
tion to judicially *"review* or *control"* the Mayor's action in the
premises.

If at the threshold of the discussion it is to be conceded that the
quoted section of the police statute is constitutional, and that the
charge of malfeasance in office against the relators was well grounded
in law and fact, it would not be a difficult matter for us to reach the
same conclusion at which the District Judge arrived; but the in-
sistance of relators' counsel is that the police statute is unconstitu-
tional, and therefore the respondent's proceedings were void; and
if the statute be constitutional, yet his order of removal is absolutely
void, for the reason that no act of malfeasance was charged against
them.

It would be a strange anomoly indeed if four of the six Police
Commissioners could be condemned without a hearing, found guilty

104 SUPREME COURT OF LOUISIANA.

State ex rel. Denis et al. vs. Mayor.

under an unconstitutional statute, and ejected from office summarily and without proof of any malfeasance in fact or in law, and no court could be found possessed of competent authority to inquire into the matter and rectify such unwarrantable abuses of the rights and franchises of citizens.

But we consider it an elementary principle of law that all corporations, whether municipal, political or private, are in all their proceedings subjected to judicial control, just as private individuals are; and we understand that this principle is enunciated in the 835th Article of the Code of Practice, which declares that *mandamus* "may be directed *to all corporations established by law* * * * to compel them to receive or restore to their functions such of their members as they shall have refused to receive, although legally chosen, or *whom they shall have removed without sufficient cause*."

That such is one of the primary objects to be attained by *mandamus* under the law of Louisiana readily appears from a casual perusal of the 829th Article of the Code of Practice, which declares that it "is an order issued in the name of the State by a tribunal of competent jurisdiction, and addressed to an individual or corporation * * * directing it to perform *some certain act belonging to the place, duty* or quality with which it is clothed."

Now, if it be a fact established that either the police law is unconstitutional, or the respondent's act was and is otherwise illegal and void, is it not "a duty or quality" with which the Mayor is clothed, as the representative of the municipal corporation of the city of New Orleans, to restore the relators, whom he has "removed without sufficient cause," "to their functions?"

And if this proposition be conceded, is not the Civil District Court a competent tribunal in the sense of the Code of Practice to grant the order and try the issue presented?

Quite a similar contention arose, and was carefully examined and decided by this court in State ex rel Mayor vs. Judge, 35 An. 637. In that case the question was whether the District Court of Ascension had jurisdiction to coerce by *mandamus* certain election officers to hold a *municipal* election in the town of Donaldsonville; and we maintained its authority in the premises and held:

"If the District Court has not jurisdiction to enforce the rights claimed by the plaintiffs in the suit under consideration, no court. has such jurisdiction, and we would have presented the case of a

well recognized legal right without a remedy. Article 11 of the Constitution provides that ' all courts shall be open, and every person, for injury done him in his rights, lands, goods, person or reputation, shall have adequate remedy by due process of law, and justice administered without denial or unreasonable delay.' In construing the constitutional definitions of the *original* jurisdiction of courts, we must be guided by this article; and when we find that, under our system of law, there has existed an ancient and established remedy for the enforcement of a recognized legal right, which is the only adequate remedy, *we will not construe* the jurisdictional provisions of the Constitution, as having effect to take away such remedy, and *to leave the right remediless, by any mere implication, however strong.*

" Our Code of Practice confers upon courts     *     *     *     the power to issue writs of mandamus addressed to public officers or corporations directing them to fulfil duties and specially ' to all corporations established by law, to compel them to make elections required by their charter.    C. P., 829 to 836.

"It provides that ' the object of the order is to prevent a denial of justice,' and that ' it should be issued in all cases where the law has assigned no relief by the ordinary means and where justice and reason require that some mode *should* exist of redressing a wrong.' C. P.''

Thereupon the court propounded this question: " Can we hold that other Articles of the Constitution have, by implication, taken away the jurisdiction of *every court*'' (the italics are ours) "to enforce such a remedy, and thus left the citizen without any mode of redress for such an ' injury to his rights?' and answered it in the negative.''

In the instant case we are even asked to go further, and say that the Civil District Court had and has no jurisdiction or constitutional authority to grant relators relief by the same "ancient and established remedy " of *mandamus*, to which we gave effect in that case, because, say the respondent's counsel, it was in effect taken away by the police statute—the final and ultimate power having been conferred upon the Mayor, and none conferred upon the courts to judicially examine and review his exercise of it !

This is an *extreme* and *radical* view to be taken of the police law;

and, in our opinion, it is one which the Legislature did not entertain, and which we decline to enforce or accept.

That *mandamus* is an "ancient and established remedy" for the correction of abuses in the management of municipal affairs, in this country as well as in Europe, is amply attested by authority, and by the highest courts in both countries, it is a settled maxim that they "entertain jurisdiction to preserve corporations in *the line of order and to correct abuses;* but they do not inquire into the merits of what has passed *in rem adjudicatum* in a regular course of proceedings." 1 Dillon Mun. Corp., 2d Ed., Secs. 179, 180, 183, 184, 189; Rex vs. Anderson, 3 Salk. 229; Rex vs. Richardson, 1 Burr. 517; 1 Dillon Mun. Corp., 3d Ed., Sec. 245, 250, 252; Rex vs. Nietles, 4 Burr. 2004; Commonwealth vs. German Society, 15 Pa. State, p. 251, and authorities cited.

Mr. High enforces this theory in his usual perspicuous style:

"While, in the application of the rule under discussion, it is conceded that if the power of removal from an office rests in the discretion of any other officer or body of officers, the exercise of that discretion will not be interfered with by *mandamus*, yet a distinction is taken between cases where such power of removal rests absolutely in the discretion of the other officers, and cases where they are only empowered to remove 'for due cause.' In the latter class of cases, the words 'for due cause' are regarded as a limitation upon the power of removal, and the determination of what is such a cause, is deemed a question of law, whose ultimate determination rests, not with the officers empowered to remove, but with the courts. In other words, while the judgment of inferior boards or tribunals upon matters which properly rest in their discretion will not be controlled or interfered with by *mandamus*, their judgment as to what the law allows them to determine, as to the extent of their jurisdiction, may be so controlled." High's Ex. Legal Remedies, Sec. 69.

But in order to escape the consequences of this universally recognized principle, the learned counsel of the respondent takes the position that under the power conferred by the police statute the right of removal is *discretionary* with the Mayor.

We do not think so. The statute gives the Mayor power to remove, it is true; but he can proceed only upon "charges" preferred, and "in all cases the commissioners shall have an opportunity to present evidence in their behalf." Or in other words, there must

be charges preferred, a trial had, evidence adduced, and a judgment rendered. These proceedings are limitations which are placed on the Mayor's power of removal; and the determination of what is just cause for removal is deemed a question of law, says Mr. High, "whose ultimate determinatio⁀ rests, not with the officers empow‐ered to remove, *but with the courts.*"

Upon careful and studious consideration of this question we feel constrained to differ from our learned brother of. the district bench, and hold that his court was fully vested with original jurisdiction, and had ample warrant of law to entertain and dispose of relators' demands.

## II.

Does the quoted provision of Section 4 of Act 63 of 1888, which confers on the Mayor of the City of New Orleans the power to remove for enumerated causes the police commissioners, vest in the Mayor judicial functions and powers, in contravention of Article 92 of the Constitution?

The provision which is alleged to be violated thereby is as follows, viz :

"No judicial powers, except as committing magistrates in criminal cases, shall be conferred on any officers other than those mentioned in this title, *except such as may be necessary in towns and cities; and the judicial powers of such officers shall not extend further than the cognizance of cases arising under the police regulations of towns and cities in this State.*" (Italics are ours.)

The power conferred by the statute in question seems to be of just such *quasi* judicial character as is necessary for the good govern-ment and correct administration of a large commercial city like New Orleans; and it only purports to extend to cognizance of cases aris-ing under its "police regulations."

Under the charter of the City of New Orleans the Council had the power and was charged with the duty *inter alia* of providing and organizing " an efficient police." Sec. 7, Act 20 of 1882.

"The executive power of the city" was vested in one Mayor, treasurer, commissioners of police, etc. Sec. 12., Ibid.

But it was deemed best for the efficiency of the police service of the city that the police department should be put under control of a police board, and accordingly one was created by the Legislature. Act 63 of 1888.

108        SUPREME COURT OF LOUISIANA.

State ex rel. Denis et al. vs. Mayor.

Section 1 of that act provides "that the powers and duties connected with and incident to the police department and police discipline of the City of New Orleans and the Parish of Orleans shall be  *  *  *  vested in and exercised by a board consisting of six commissioners, and of the Mayor of said city," etc.

But it seems evident that this board was not to be entirely freed from the control of the City Council, because the act provides that the "commissioners shall be elected by the Common Council  *  *  *  and upon the expirations of the terms of any of such commissioners the offices shall be filled by election of said Common Council," etc.

It provides that "said board shall meet  *  *  *  subject to the call of the Mayor;" that "the Mayor  *  *  *  shall be the presiding officer of said board," etc.; and that the "Commissioners of the Police  *  *  *  may at any time be removed by the Mayor," etc.

It further provides that nothing therein "shall be so construed as to impair, diminish or reduce the power of the Mayor as commander in chief of said police force," etc.

In construing this enactment we said in the recent case of State ex rel. Nicholls, Governor, vs. Shakspeare, Mayor, et als., 41 An. 156, "that a careful analysis of the act discloses that its true and clear purport is to provide for *a complete reorganization of the entire police force* of the city of New Orleans;" but it was not therein held or decided that the Board of Police was to be an organization wholly independent of the City Council. It in fact was made and intended to be and remain a component part of the municipal government. · Such being the case, the Police Commissioners are necessarily subject to the power of amotion, which all corporations possess inherently. And such we take to be the power which the police statute conferred on the Mayor of the city instead of the Common Council, and which the Legislature had the constitutional power to confer upon either the Mayor or the City Council at its option.

In State ex rel. Behan, Mayor, vs. Judges, 35 An. 1075, we held that the power of amotion exists *ex necessitati rei* in every corporation for the removal of an officer for a reasonable and just cause.

In that case the proceeding was by an impeachment of the Treasurer of the city, which was the means of amotion provided by the city charter.   Sec. 53, Act 20 of 1882.

NEW ORLEANS, JANUARY, 1891.        109

State ex rel. Denis et al. vs. Mayor.

In this statute different means are provided, but they are of like character, and equally lawful and constitutional.

The charge of unconstitutionality of the act, on the ground that it invades Articles 196 and 200 of the Constitution by providing different means for the removal of municipal officers than those therein indicated, is, in our opinion, equally untenable.

In Richardson vs. Rousseau, 35 An. 933, we decided the question now pressed upon our attention adversely to the relator's contention.

The question then was the power of a police jury to remove and replace a parish treasurer—it having been contended that the power of removal conferred by the 2743d Section of the Revised Statutes on the police jury was inimical to the provisions of the 201st Article of the Constitution. But we held that " the constitutional article applies exclusively to quite different classes of officers, namely : to such as are elected by the people or appointed by the executive. In conferring on police juries the right of appointment and removal the Legislature intended to enable those bodies in cases of expediency and urgency to act promptly for the protection and preservation of the public interest.''

The power of removal conferred upon the respondent by the police statute is of the same character. It is the power of amotion. The efficacy of this power depends on the celerity and certainty of its enforcement; and should its enforcement depend upon the slowness usually attendant upon ordinary judicial proceedings, its efficacy would be in a great measure destroyed.

We can perceive no well grounded objection to such a power being extended to municipal corporations or to its being exercised in the mode pointed out.

III.

The respondent alleges that the issuance of commissions by the executive to other persons *in lieu* of the removed commissioners had the legal effect of abating or extinguishing relator's cause or right of action.

The Mayor's order of removal bears date July 7, 1890, and the present suit was filed on the 14th of that month; and the commissions, which are invoked by respondent's counsel, bear date August 5, 1890.

The commissions were tendered by the respondent's counsel and offered to be filed in evidence, but same were rejected by the court,

and they reserved a bill of exceptions.   We think the ruling was manifestly correct.   In our opinion on motion to dismiss appeal we held that this was, in no legal sense, a suit in which a title to office was involved.   That that question was settled.

Whether there is or not a vacancy in the office of any one or all of the removed commissions is to be determined in our opinion on the merits.   For, if the relators are legally removed, vacancies do exist; but if this attempted removal was illegal no vacancies exist. Upon the existence *vel non* of such vacancies necessarily depend the validity of those commissions—a question which is not before us. But had the commissions been *received* in evidence we are satisfied that their issuance would not have extinguished relators' cause of action.

### IV.

Evidently there is no misjoinder of parties.   The *identity* and *mutuality* of the interest of the four relators is complete.

Charges were preferred against them in *globo*.   They were tried at the same time and place and without any severance.   The same testimony was advanced against one and all.   The four were removed from office by one single decree of the Mayor.

Where there are several persons similarly situated and having a *common* interest at stake they may be properly joined as plaintiffs. This right has been frequently recognized by us.   Handy vs. New Orleans, 39 An. 107; State ex rel. Johnson vs. Tax Collectors, 39 An. 530; Conery vs. New Orleans Water Works, 39 An. 770; 27 An. 319; 33 An. 567; 101 U. S. 699; 2 Dillon's Mun. Corp., Sec. 731.

There is no force in this contention.

### .V.

From all that has been said on the various points in controversy there is sufficient to attest the existence of a cause of action in the relators' petition.

### VI.

Having given careful consideration to all the complicated questions of law, which respective counsel have, with marked ingenuity, interposed, we will now examine the merits of the controversy.

The first and principal question is whether the charges preferred against the relators amount, in law, to malfeasance in office, in the sense of the statute under consideration.

The following is a fair summary of the charges which were pre-ferred against the relators on the 5th of July, 1890, by James G. Clark, president *pro tem.* of the City Council:

That the relators, "intending to do so, did wrongfully and unlaw-fully usurp the functions and the powers properly belonging to the Mayor, as a member of the police board, as presiding officer thereof, and as commander-in-chief of the police force of the City of New Orleans. That on or about the 17th of June, 1890, the Mayor being then present in the city, and able to act, and being alone authorized to call a meeting of the police board, Commissioner Denis ordered and directed a meeting of the Board of Police Commissioners, to be called for Wednesday, June 18 (1890), at 10 o'clock A. M."

They then proceed to state that the four relators "did actually meet at the office of Commissioner Drolla, and wrongfully and ille-gally assumed to transact official business, and to transmit to the legislative committee of the Legislature of Louisiana their conclu-sion so arrived at as being the official action of the police board; and all of which was done in the face of the written protest of the Mayor."

The second specification made is:

"That, at the regular meeting of the police board, held on Wed nesday, July 2, 1800, upon the reading of the minutes of the meeting at Commissioner Drolla's office, the regularity of that meeting was again brought in question by the Mayor, who formally objected and protested the illegality and irregularity of the same; and thereupon Commissioner Denis again proceeded to usurp the functions of the Mayor, and in the presence of the latter actually put the question on the approval of the minutes of the meeting at Commissioner Drolla's office, and declared same to have been adopted by the Police Board;" and that the other three relators aided and abetted Commissioner Denis in so doing, same being acts of usurpation and malfeasance in office, violation of the provisions of the police stat-ute.

There is no serious controversy in regard to the facts. The official record kept of the proceedings in question show that there was a meeting of the Police Board held on the 18th of June, 1890, which was attended and participated in by *all six* of the commissioners, the *Mayor alone* being absent. From the minutes of that meeting it appears that the same had been convened for the purpose of taking

some action upon a communication that had *then* been only recently received from State Senator Behan, looking to some proposed amendment of the police statute. That said communication had been referred to the Mayor for his consideration, and he had not, up to that date, taken any action. That the other "commissioners had called upon him"—Commissioner Denis—"and requested him to call a meeting to discuss (the) proposed amendments to the police bill, and in response to their request he called the meeting."

Amongst the records of this meeting appears an official communication from the Mayor, in which he acknowledges the receipt of a notification to attend the meeting, denies the authority of the call, and declares it to be null and void. In response, Relator Denis. stated that he was president *pro tem.* of the board, and "knew of no law to prevent gentlemen composing the board from assembling to discuss matters of importance. An invitation had been received from a committee of the State Senate, and it was due to the gentlemen composing that body that some reply should be made."

There also appear among the minutes several communications. from the private secretary of the Mayor addressed to Hon. F. J. Dreyfous (at the time a member of the House of Representatives), in which is contained an amendment to the police statute which he (the Mayor) had proposed.

In one of these, which bears date May 12, 1890, he makes use of this expression, viz:

"As I've told you, I am (and I speak from long experience in the practical handling of police and fire departments) *opposed to boards. and am in favor of approaching* 'as nearly as possible the one man power.' * * * Practically, you can not get a non-political board; or if one be elected, it will soon degenerate into a political one.. No better evidence of this is needed than is afforded by the present Police Board. * * * I was, as you know, opposed to the Police Board. We have it in spite of ourselves, and I think to the injury of the city and the force. * * * I am opposed generally to legislative interference in city affairs. We are old enough, and I think wise enough, to be emancipated."

In his letter to Representative Dreyfous of date June 4, 1890, he complains of his action, and *criticises* the amendment he had introduced, saying:

"In the original act no such rule or order of the board was opera-

tive *unless it had the sanction of the Mayor.* You change this and make the *board, by a two-thirds vote, a power over and despite the Mayor.*" (Italics are ours.)

To this letter are appended the amendments proposed by the Mayor. They are as follows, *inter alia:*

That Section 3 " be amended so as to read as follows: ' The Mayor of the City of New Orleans shall be the presiding officer of said board; *shall have a vote on all questions, and in the event of a tie, shall in addition have a casting vote.*' (Italics ours.)

" That Section 9 shall be amended so as to read as follows:    *    * and *provided* further, that the Mayor of the City of New Orleans shall have the power to *veto* any promotion or appointment made by the Board of Commissioners," etc.

These are given as mere illustrations of the numerous amendments proposed by the Mayor.

On the 25th of June, 1890 three of the relators addressed a communication to the Mayor and other commissioners and stated that " to the amendments known as the Dreyfous amendments (they) could urge no objections and recommended their adoption."

These are the proceedings which provoked the discussion and originated the prosecution of the relators for malfeasance.

Nothwithstanding the fact that Commissioner Denis was President *pro tem.* of the Police Board; that he called an advisory meeting, at the instance and request of his associates, to act upon an important matter; that the necessity for the convocation of a meeting had been brought to the knowledge of the Mayor, and he had declined and refused to act; and that all *six* of the Commissioners had participated in the proceedings—the complaint is that the act of the relators was an usurpation of authority and a malfeasance, because *no one other than the Mayor could call the meeting.* And that when, at a subsequent and *regular* meeting, the proceedings of the *call* meeting were presented for consideration and a vote of approval was demanded, the Mayor refused to put the question; and therefore Relator Denis put the question to a vote, and it was unanimously carried and declared to have been regularly and legally adopted. This act of relators is denounced as a further usurpation, and a malfeasance in office in the sense of the law.

During the course of the trial before the Mayor three of the relators appeared, and in the course of their statement said :

8

" The minutes at that meeting were read, and the chairman said there was no objection to the special session. The board had acted intelligently, honestly and above board, with no spite or malice. All the commissioners took part in the session, and acted understandingly."

Now what are the provisions of the statute which control the respective acts of the Mayor and the commissioners in the premises ? They are as follows:

" Said board shall meet at least twice a month, *and as often as necessary, subject to the call of the Mayor.*" Sec. 2, Act 63 of 1888. The Mayor of the City of New Orleans shall be the presiding officer of said board, but shall have *only a casting vote therein.* The board shall elect one of its members as President *pro tempore* of the board. Not less than *four* of said commissioners shall constitute a quorum." Sec. 3, Ibid.

We do not think it clearly and unequivocally appears from the language quoted that no meeting of the board could be called except by the Mayor. Nor does it so appear that he alone is competent to judge of the necessity of a meeting being called. Certain it is that he shall be the presiding officer at all meetings; but the fact that the law requires that a President *pro tempore* shall be elected evidently contemplates that meetings *might* be held at which the latter *might* preside. As the Mayor has *no vote at any meeting* of the board, it does not seem reasonable that he should be the exclusive judge of the necessity for a meeting of the board.

Without discussing the merits of the controversy between the Mayor and the commissioners, in reference to the proposed amendments to the police statute, we can judge of the *sufficiency* of the *cause* for the amotion of the relators, on account of the proceedings on which the charges against them are based.

For Mr. Dillon says: " The sufficiency and reasonableness of the cause of the removal are questions for the courts." 2 Dillon's Mucipal Corporations, 3d Ed., Sec. 252 and note—and the English courts have frequently held that " much depends upon the cause of the neglect, and whether the *effect* is to *obstruct* or *hinder the business of the corporation* or officer from being done." (Italics ours.) Rex vs. Liverpool, 2 Burr. 723; Rex vs. Richardson, 1 Burr. 517; Rex vs. Doncaster, 2 Burr. 738; Rex vs. Ponsonby, 1 Vis. Jr. 1; Rex vs. Taylor, 3 Salk. 231; 2 Kent's Com. 279; Willard's Appeal, 4 Rhode Island 595.

And proceeding on that line of authority, with which the precepts of our Code of Practice are in perfect harmony, we hold that the relators "were removed without sufficient cause;" and we are constrained to decide that the charges preferred against them do not constitute either usurpation of or malfeasance in office, in the sense of the police law. At most their acts could amount to an honest error of judgment. We are not to be understood, however, as justifying the action of relators in calling and holding meetings without the authority of the. Mayor, or in adopting the minutes of said meeting irregularly. Had such action been undertaken for the purpose of adopting legislative measures affecting the administration of the police, it might have been a sufficiently serious matter to have justified action by the Mayor to maintain his authority. But the subject matter considered at the meeting involved no question concerning the administration of the police under the existing law. It involved merely the consideration of proposed amendments to the police statute then pending before the General Assembly; and merely expressed their opinions on that question by the members of the board present at the meeting, which might have been as well expressed by such members in private assembly. While the form of their action may have been objectionable, the substance was harmless, and in no manner affected the proper discharge of their functions or the administration of the police.

We can not hold this to be such malfeasance as was contemplated by the statute, or such as would support removal.

It is needless to say that this opinion in no manner touches upon the principles enunciated in the Lamantier case and those of like character touching the power of removal when exercised by the coordinate executive department of the State government.

Our decision rests upon entirely different principles, applicable, under express articles of the Code of Practice, to all corporations established by law.

The order of the Mayor removing the relators from the offices of Police Commissioners was erroneous, and it must be annulled and reversed, and the relators severally restored to their functions and franchises.

It is therefore ordered and decreed that the judgment appealed from be reversed, and that the order of the respondent of date July 7, 1890, removing relators from office, be and the same is hereby

revoked and annulled, and that they be restored to their offices, functions and franchises, and that to that end the *mandamus* be made peremptory at the respondent's cost in both courts.