# COLER *v.* CLEBURNE.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF TEXAS.

No. 728. Submitted January 3, 1889. — Decided May 13, 1889.

Where a case is tried by a Circuit Court, on the written waiver of a jury, and there is a bill of exceptions which sets forth the facts which were proved, that is a sufficient special finding of facts to authorize this Court, under § 700 of the Revised Statutes, to determine whether the facts found are sufficient to support the judgment.

A statute of Texas provided that bonds to be issued by a city, for erecting water works, should be signed by the mayor, and forwarded by him to the state comptroller for registration. Bonds issued for that purpose were dated January 1, 1884, but not signed till July 3, 1884, and then were not signed by the mayor, but, under a resolution of the city council, were signed by a private citizen, who had been mayor on January 1, 1884, but had gone out of office in April, 1884, and been succeeded by a new mayor, and who appended the word "mayor" to his signature. The bonds stated on their face that they were authorized by a statute of Texas, and an ordinance of the city, specifying both. In a suit against the city, to recover on coupons cut from the bonds, brought by a *bona fide* holder of them; *Held,*

    (1) No one could lawfully sign the bonds but the person who was mayor of the city when they were signed;

    (2) The city council had no authority to provide for their signature by any other person;

    (3) The city was not estopped as against the plaintiff, from showing the facts as to the signature of the bonds;

    (4) The bonds were invalid.

The case distinguished from *Weyauwega* v. *Ayling*, 99 U. S. 112, and controlled by *Anthony* v. *County of Jasper*, 101 U. S. 693.

THE case, as stated by the court, was as follows.

This is an action at law brought in the Circuit Court of the United States for the Northern District of Texas, by W. N. Coler, Junior, against the city of Cleburne, a municipal corporation of Texas, to recover on 234 coupons, of $35 each, amounting to $8190, cut from a series of 51 bonds, of $1000 each, purporting to have been executed and issued by that corporation. The case was tried by the court, on the written

waiver of a jury, and, having heard the evidence, it adjudged that the plaintiff take nothing by his suit, and that the defendant go without day and recover its costs. The plaintiff has brought a writ of error.

There is no special finding of facts, but there is a bill of exceptions, which, after setting forth what was proved, states, that the court, on the pleadings and proof, found the law for the defendant, and rendered final judgment for it and against the plaintiff, for costs of suit. This is a sufficient special finding of facts to authorize us, under § 700 of the Revised Statutes, to determine whether the facts found are sufficient to support the judgment.

The plaintiff, in his petition and four supplemental petitions, alleged that he was the *bona fide* owner, holder and bearer, before maturity, of the coupons, for a valuable consideration paid; that the bonds were issued by the city for the purpose of erecting a system of water works; and that the bonds and coupons were made and issued in pursuance of article 420 of the Revised Statutes of the State of Texas, and of an ordinance adopted by the city council of the defendant, September 13, 1883.

The defendant, with other pleas, interposed one, called in the record a plea of *non est factum*, which says, that the bonds and coupons in question are not the obligations of the defendant, and were never executed and delivered by it, because they never had any existence prior to July 3, 1884; that they were never signed by J. M. Odell, (who had, on the first Tuesday in April, 1884, been duly elected to the office of mayor of said city for a term of two years, and was on the 3d of July, 1884, the legally qualified and acting mayor of the city,) or by his authority, or by any person authorized by law to act as mayor of the city; that said mayor at all times refused to sign the same; that, although said bonds and coupons purport, on their face, to have been executed on January 1, 1884, and to be signed by the mayor of the city, they were in fact made on the 3d of July, 1884, and antedated, and signed by one W. N. Hodge, a private citizen, but formerly mayor of the city, whose term of office had expired in April, 1884; that

any registration of the bonds in the office of the comptroller of public accounts of the State of Texas was illegal and without authority, because they were never forwarded to the comptroller by the mayor, Odell, or by any person authorized by him to do so, and he never forwarded to the comptroller his certificate showing the values of taxable property, real and personal, in said city for the year 1884, and never authorized any person so to do; and that said bonds and coupons were never delivered by said mayor, or by his authority, or by any person authorized to act as mayor of the city, to the Texas Water and Gas Company, or to any other person or persons.

The plaintiff filed a demurrer to the above plea, as insufficient in law. The bill of exceptions states that this demurrer was considered by the court in its general finding.

The bonds and coupons, which were put in evidence, were in the following form:

"1000.       UNITED STATES OF AMERICA.       1000.
"No. 51.                                            $1000.
"The city of Cleburne, in Johnson County, State of Texas, hereby acknowledges that, for value received, it is indebted and bound and hereby promises to pay, unto the Texas Water and Gas Company, or bearer, at the ———, in the city of New York, at the expiration of twenty years from the date hereof, the sum of one thousand dollars in lawful money of the United States of America, and also that it is bound and will pay interest on said sum of one thousand dollars, at the rate of seven per centum per annum, on the first days of January and July of each year thereafter, to and including the first day of January, A.D. 1904, to the bearer, according to the respective coupons therefor hereto attached, for thirty-five dollars each, signed by the mayor of the city of Cleburne and attested by the secretary of the city of Cleburne, upon presentation at the fiscal agency in New York. This bond is authorized by article 420 of the Revised Statutes of the State of Texas and by an ordinance adopted by the board of aldermen of the city of Cleburne, on the 13th day of Sept., 1883, in conformity to said article 420.

" This bond is one of a series of fifty-one of like tenor and effect, issued for the erection of a complete system of water works, and is secured by an ordinance of the city of Cleburne under the general laws of the State, and setting apart all the net revenues of said water works to pay the interest and sinking fund upon the same, and requiring the council to annually levy and collect a tax of thirty-five cents on the one hundred dollars' worth of property, if so much shall be required, to pay the interest and two per cent sinking fund.

" It is understood that the city of Cleburne shall have the right to call in any or all the bonds of this series, numbered from one to fifty-one, respectively, at any time after ten years from the date of said bonds, upon first giving public notice thereof in the city organ of the city of Cleburne, for three months before the first days of January or July in any year, and interest shall cease from the time they are so called in, respectively.

"In witness whereof the mayor of the city of Cleburne hereto signs his name, and the city secretary of the [L. S.] city of Cleburne attests with the seal of the said city of Cleburne, hereto affixed, this the first day of January, A.D. 1884.

" W. N. HODGE, *Mayor.*

" Attest : W. H. GRAVES, *Secretary.*

" 1000."

The bond is indorsed as follows : " 51. $1000 city of Cleburne water-works bond ; interest seven per cent, payable July 1st and January 1st of each year. Twenty-years bond. Registered July 12th, 1884. Wm. J. Swain, comptroller."

" $35.00.                                                              $35.00.

" On the first day of July, 1886, the city of Cleburne, State of Texas, will pay to bearer, in the city of New York, thirty-five dollars, being six months' interest on water-works bond No. 51.

" W. N. HODGE, *Mayor.*

" W. H. GRAVES, *Secretary.*"

Statement of the Case.

The plaintiff proved that the Texas Water and Gas Company, a corporation, through its proper officers, made a written contract with the city, through its proper officers, on September 13, 1883, to erect for it a complete system of water works, the material used and the manner of building being fully shown in specifications and plans, on or before June 1st, 1884, in consideration for which the city agreed to pay the builder $51,000, in bonds of $1000 each, payable to bearer 20 years after January 1, 1884, bearing interest at seven per cent, represented by semi-annual coupons for $35 each attached thereto, the same to be engraved, signed by its mayor and secretary, and delivered to the Texas Water and Gas Company upon the completion of said system of water works according to plans and specifications, and the acceptance thereof by the city after the same had been duly tested. It was further proved, that said contract provided that, upon the works having been tested and the same reported and received by the city, the builder should be discharged from all further obligations on account of the works. It was further proved, that the system of water works was built within the time agreed upon, and accepted by the city; and that, on the 13th of September, 1883, the city council adopted an ordinance fully authorizing the contract above mentioned, a copy of which ordinance is given in the margin.[1]

---

[1] An ordinance to provide for the construction of water works in the city of Cleburne, to provide for issuing bonds, and to levy a tax to pay interest and create a sinking fund.

Whereas the city council of the city of Cleburne deem it absolutely necessary that some steps should be taken by the city of Cleburne to protect the property of the city and citizens against fire; and whereas it is further manifest that the establishment of an efficient system of water works is the most economical protection against fires; and whereas the Texas Water and Gas Company, a corporation having its chief domicil in the city of Tyler, Smith County, Texas, has made a proposition, with plans and specifications, to construct a complete system of water works in the city of Cleburne, and for the city of Cleburne, (as per plans and specifications now on file in the office of the city secretary,) for fifty-one bonds of the city of Cleburne for one thousand dollars each, with interest at seven per cent per annum, with coupons attached for interest, payable semi-annually; and whereas the city

Statement of the Case.

It was also proved, that, after the defendant accepted the water works, and on July 3, 1884, the 51 bonds for $51,000 were delivered to the Texas Water and Gas Company, and

council of the city of Cleburne has accepted said proposition of the said Texas Water and Gas Company; now, therefore —

Be it ordained by the city council of the city of Cleburne, That the mayor and city secretary are hereby authorized and fully empowered to execute, sign and deliver for and in behalf of the city of Cleburne a contract with the Texas Water and Gas Company, a corporation under the laws of Texas, for the construction of a complete system of water works within the corporate limits of the city of Cleburne, according to the plans and specifications submitted by the Texas Water and Gas Company, through M. T. Brown, vice-president and general manager of said corporation; and it is further ordained, that the mayor is forthwith required to have lithographed fifty-one bonds for one thousand dollars each, due twenty years after date, and redeemable at the option of the city at any time after ten years, with forty coupons attached to each, for thirty-five dollars each, payable in the city of New York or in the city of Austin, Texas, the said coupons to fall due the first day of July, 1884, and the first day of January, 1885, and on each subsequent first day of July and first day of January for each and every year up to and including the first day of July, 1905, and, after said bonds are lithographed, the same to be executed, signed and delivered to the said Texas Water and Gas Company, upon the said company's complying with their contract, as therein provided.

And it is further ordained by the city council aforesaid, that all the revenues realized from operation of water works aforesaid, over and above the expenditures in operating the same be, and the same is hereby, appropriated and constitute a fund to pay the interest and create a sinking fund for the final redemption of said bonds as afore provided.

And it is further ordained by the city council aforesaid, that the following tax shall be annually levied and collected, and the same is hereby appropriated, to pay the interest on water-works bonds hereinbefore authorized to be issued, one fourth of one per cent on each one hundred dollars' worth of property, and that this provision shall remain and be in force until the said water-works bonds are fully paid and satisfied, provided nothing herein shall prevent the city from remitting the tax or any part thereof herein provided for, in the event the net revenue shall realize a fund sufficient to pay interest and create ten per cent sinking fund on said water-works bonds.

And it is further ordained that this ordinance takes effect from and after its passage.

And it is further ordained by the city council aforesaid, that to the above there shall be levied and collected one tenth of one per cent, under and by virtue of the power of the city to levy and collect an annual tax to defray the current expenses of its local government, and the same is hereby set

registered by the comptroller of the State; that the defendant, before the delivery of said bonds, cut off and cancelled the first coupon thereon, maturing July 1, 1884; that it took charge of the works and contracted a sale of them to another corporation, which corporation operated them for a time; that afterwards the defendant resumed the control of them and still has possession of them, and uses them for fire protection and other uses; that the Texas Water and Gas Company sold all of the bonds and coupons and delivered them to third parties soon after they were received; that the defendant, by its city council, on July 3, 1884, adopted a resolution authorizing and requesting ex-Mayor W. N. Hodge, whose name had been engraved on the coupons attached to the 51 bonds, to sign the bonds as and upon the date January 1, 1884, when he was actually the mayor of the city, and that said bonds be signed by W. H. Graves, who was the secretary of the defendant on January 1, 1884, as well as on July 3, 1884. The defendant proved that W. N. Hodge, who signed the bonds, ceased to be mayor in April, 1884; that Odell became then the mayor; that the bonds were signed July 3, 1884; and that the city council authorized Hodge, who was then a private citizen, to sign the bonds on that day.

It was also proved that Mayor Odell did not furnish a statement of the valuation of property to the comptroller, nor forward to him the 51 bonds for registration, and refused to sign more than 40 of said bonds; and that the defendant was using and operating the water works, and had been for over 20 months.

Articles 420 to 424, of the Revised Statutes of Texas, in

---

apart and appropriated to the payment of the interest and the sinking fund of the bonds herein provided for.

Provided, that this section of this ordinance shall be inoperative for such year or years as it may be found that the tax and revenue heretofore provided for and set apart shall be sufficient to pay the interest and sinking fund as provided.

Passed September 13th, 1883.

Approved September 13, 1883.

(Signed)          **W. N. HODGE,** *Mayor.*

Attest: **W. H. GRAVES,** *Secretary.*

force at the time of the issue of these bonds, (Rev. Stat. of 1879, title 17, c. 4, p. 72,) were as follows :

"Art. 420." The city council shall have power "to appropriate so much of the revenues of the city, emanating from whatever source, for the purpose of retiring and discharging the accrued indebtedness of the city, and for the purpose of improving the public markets and streets erecting and conducting city hospitals, city hall, water works, and so forth, as they may from time to time deem expedient ; and in furtherance of these objects they shall have power to borrow money upon the credit of the city, and issue coupon bonds of the city therefor, in such sum or sums as they may deem. expedient, to bear interest not exceeding ten per cent per annum, payable semi-annually at such place as may be fixed by city ordinance : *Provided,* That the aggregate amount of bonds issued by the city council shall, at no time, exceed six per cent of the value of the property within said city, subject to *ad valorem* tax.

"Art. 421. All bonds shall specify for what purpose they were issued, and shall not be invalid if sold for less than their par value ; and when any bonds are issued by the city a fund shall be provided to pay the interest and create a sinking fund to redeem the bonds, which fund shall not be diverted nor drawn upon for any other purpose, and the city treasurer shall honor no drafts on said fund except to pay interest upon, or redeem the bonds for which it was provided.

"Art. 422. Said bonds shall be. signed by the mayor and countersigned by the secretary, and. payable at such places and at such times as may be fixed by ordinance of the city council, not less than ten nor more than fifty years.

". Art. 423. It shall be the duty of the mayor, whenever any bond or bonds are issued, to forward the same to the comptroller of public accounts of the State, whose duty it shall be to register said bond or bonds in a book kept for that purpose, and to indorse on each bond so registered his certificate of registration, and to give, at the request of the mayor, his certificate certifying to the amount of bonds so registered in his office up to date.

"Art. 424. That it shall be the duty of the mayor, at the time of forwarding any of said bonds for registration, to furnish the comptroller with a statement of the value of all taxable property, real and personal, in the city; also, with a statement of the amount of tax levied for the payment of interest and to create a sinking fund. It is hereby made the duty of the comptroller to see that a tax is levied and collected by the city sufficient to pay the interest semi-annually on all bonds issued, and to create a sinking fund sufficient to pay the said bonds at maturity, and that said sinking fund is invested in good interest-bearing securities."

It is assigned for error, that the Circuit Court erred in overruling the plaintiff's demurrer to the plea of *non est factum*, because that plea failed to exclude the idea that the defendant, or the law, had authorized the person who actually signed the bonds and coupons to do so.

*Mr. W. S. Herndon* for plaintiff in error.

Plaintiff being a *bonâ fide* holder was not required to look beyond the recitals in the bond and the legislative enactments giving power to issue them.

If at the date of the bond it was authorized by law and if it appears to have been properly issued in accordance with the enabling acts, he must recover, though there may have been irregularity and even fraud or misconduct on the part of the agents who acted for the city in uttering them. The bonds bear date January 1, 1884. At that time W. N. Hodge was the mayor of this city, and his signature appears upon the bonds and on the coupons. This is the only ground of irregularity and is the basis of plea of *non est factum*. *Weyauwega* v. *Ayling*, 99 U. S. 112; *Walnut* v. *Wade*, 103 U. S. 683; *East Lincoln* v. *Davenport*, 94 U. S. 801; *Clay County* v. *Society for Savings*, 104 U. S. 579; *County of Moultrie* v. *Savings Bank*, 92 U. S. 631; *Nauvoo* v. *Ritter*, 97 U. S. 389.

The ordinance adopted by defendant city, September 13, 1883, became a part of the contract and was the authority to the then mayor, W. N. Hodge, and the secretary, to draft and

sign the bonds, ready for delivery, before January 1, 1884. The bonds and coupons having been signed in accordance with said ordinance, the innocent purchaser was not required to look beyond this, and the defendant city having uttered the bond thus required is estopped from denying its regularity and validity. The registration of the bonds by the comptroller was a judicial act, based upon a determination of the value of the taxable property, and the status of the bonded debt. The indorsement of this registration binds the municipality as against an innocent purchaser.

Such power having been exercised and the bond registered, the innocent purchaser may rely upon such judicial decision in favor of the regularity and validity of the bond. Arts. 323 and 424, Revised Statutes of Texas; *Sherman County* v. *Simons*, 109 U. S. 735; *Anderson County* v. *Beall*, 113 U. S. 227; *Town of Coloma* v. *Eaves*, 92 U. S. 484; *Commissioners* v. *Bolles*, 94 U. S. 104; *Commissioners* v. *Clark*, 94 U. S. 278.

*Mr. James W. Brown* for defendant in error.

Mr. Justice Blatchford, after stating the case, delivered the opinion of the court.

Article 422 of the statute provides that the bonds shall be signed by the mayor. This clearly means that they shall be signed by the person who is mayor of the city when they are signed, and not by any other person. The legislature having declared who shall sign them, it was not open to the city council to provide that they should be signed by some other person. Article 423 of the statute provides that it shall be the duty of the mayor, whenever any bonds are issued, to forward them to the comptroller of public accounts of the State, for registry. They could not be issued until they were properly signed by a person who was the mayor at the time they were signed, and the comptroller could receive them lawfully for registry only from such mayor. So, also, by article 424, it is made the duty of the same mayor, and not that of

any other person, at the time of forwarding the bonds to the comptroller for registration, to furnish him with the statement specified in that article. No other person than such mayor could furnish the comptroller with such statement.

The complete answer to the suggestion that the plea does not negative the idea that the bonds may have been signed by a person authorized by the defendant to sign them, is that, in view of the statute, the defendant had no power to authorize any other person to sign them than the person who was mayor at the time they were signed. The answer to the suggestion that the plea does not negative the idea that they may nave been signed by a person authorized by law to sign them, is, that, in view of the provisions of the statutes of Texas referred to, and of the allegations of the plea, it was for the plaintiff to aver or show, in reply to the plea, that the person who signed them, or some other person than the person who was mayor at the time they were signed, was authorized by law to sign them.

It is contended for the plaintiff, that as Hodge, who signed the bonds as mayor, was the mayor on January 1, 1884, the date of the bonds, and the plaintiff was an innocent purchaser of them for value, he was not bound to look beyond the bonds themselves, and the enabling acts authorizing their issue, and that, if there was lawful authority to issue them and the city appeared to have acted upon that authority, he was not obliged to inquire further, no matter what irregularity characterized the acts of the officers who issued them on behalf of the city; that the face of the bonds referred him to article 420 of the statutes, and to the ordinance of September 13, 1883; that an examination of the statute and the ordinance would show authority to issue the bonds; that the records of the city would show that the persons who signed the bonds were the mayor and the secretary of the city on the 1st of January, 1884, the date of the bonds; that the indorsement on each bond would show that it had been registered by the comptroller; and that he had a right to presume that the bonds had been forwarded to the comptroller by the mayor, as provided by the statute, or otherwise the comptroller would not have registered them.

But we have always held that even *bona fide* purchasers of municipal bonds must take the risk of the official character of those who execute them. An examination of the records of the city in regard to the issuing of the bonds would have disclosed the fact that the bonds had not been signed and issued under the ordinance of September 13, 1883, until July 3, 1884, that W. N. Hodge was not mayor on that day; and that the person who then signed the bonds as mayor was a private citizen.

In *Anthony* v. *County of Jasper,* 101 U. S. 693, municipal bonds were signed and issued in October, 1872, on a subscription made in March, 1872, to the stock of a railroad company, and bore date the day of the subscription. The presiding justice who signed the bonds did not become such until October, 1872. Thus the person who was in office when the bonds were actually signed, signed them, but they were antedated to a day when he was not in office. In the present case, the bonds were not signed by an officer who was in office when they were signed, but by a person who was in office on the antedated day on which they bore date. In the Jasper County case there was a false date inserted in the bonds in order to avoid the effect of a registration act which took effect between the antedated date and the actual date of signing. In the present case, there was a false signature. But the principle declared in the Jasper County case is equally applicable to the present case. It was there said by Chief Justice Waite, delivering the judgment of the court, (p. 698:) "The public can act only through its authorized agents, and it is not bound until all who are to participate in what is to be done have performed their respective duties. The authority of a public agent depends on the law as it is when he acts. He has only such powers as are specifically granted; and he cannot bind his principal under powers that have been taken away, by simply antedating his contracts. Under such circumstances, a false date is equivalent to a false signature; and the public, in the absence of any ratification of its own, is no more estopped by the one than it would be by the other. After the power of an agent of a private person has been

revoked, he cannot bind his principal by simply dating back what he does. A retiring partner, after due notice of dissolution, cannot charge his firm for the payment of a negotiable promissory note, even in the hands of an innocent holder, by giving it a date within the period of the existence of the partnership. Antedating, under such circumstances, partakes of the character of a forgery, and is always open to inquiry, no matter who relies on it. The question is one of the authority of him who attempts to bind another. Every person who deals with or through an agent assumes all the risks of a lack of authority in the agent to do what he does. Negotiable paper is no more protected against this inquiry than any other. In *Bayley* v. *Taber*, 5 Mass. 286, it was held that when a statute provided that promissory notes of a certain kind, made or issued after a certain day, should be utterly void, evidence was admissible on behalf of the makers to prove that the notes were issued after that day, although they bore a previous date. . . . Purchasers of municipal securities must always take the risk of the genuineness of the official signatures of those who execute the paper they buy. This includes, not only the genuineness of the signature itself but the official character of him who makes it."

This ruling has been since followed. In *Bissell* v. *Spring Valley Township*, 110 U. S. 162, where bonds were issued by a township in payment of a subscription to railway stock, under a statute which made the signature of a particular officer essential, it was held, that without the signature of that officer they were not the bonds of the township, and that the municipality was not estopped from disputing their validity by reason of recitals in the bond, setting forth the provisions of the statute, and a compliance with them. The same principle is recognized in *Northern Bank* v. *Porter Township*, 110 U. S. 608, 618, 619, and *Merchants' Bank* v. *Bergen County*, 115 U. S. 384, 390.

The case of *Weyauwega* v. *Ayling*, 99 U. S. 112, is cited for the plaintiff. In that case the bonds of a town bore date June 1, and were signed by A as chairman of the board of supervisors, and by B as town clerk, and were delivered by

A to a railroad company. When sued on the coupons by a *bona fide* purchaser of the bonds for value before maturity, the town pleaded that the bonds were not in fact signed by B until July 13, at which date he had ceased to be town clerk, and his successor was in office. It was held, Chief Justice Waite delivering the opinion of the court, that the town was estopped from denying the date of the bonds, because, in the absence of evidence to the contrary, it must be assumed that the bonds were delivered to the company by A with the assent of the then town clerk.

In *Anthony* v. *County of Jasper* the court distinguished that case from *Weyauwega* v. *Ayling*, and said that in the latter case it held that "the town was estopped from proving that the bonds were actually signed by a former clerk after he went out of office, because the clerk in office adopted the signature as his own when he united with the chairman in delivering the bonds to the railroad company," while in the former case the bonds were not complete in form when they were issued, and it was only by a false date that they were apparently so. In the present case, it appears affirmatively by the bill of exceptions that the person who was mayor of the city at the time the bonds were signed took no part in signing, delivering or issuing them; that they were not complete in form when they were issued, because they were not signed by the then mayor; and that it was only by a false date that they were then apparently complete in form. Hence, the present case is not like *Weyauwega* v. *Ayling*, but is like *Anthony* v. *County of Jasper*.

This case is analogous to that of *Amy* v. *City of Watertown*, No. 1, 130 U. S. 301, where the statute required process to be served on the city by serving it on the mayor, and it was not so served, and it was held that there could be no substituted service, and no legal service without service on the mayor.

Regarding these views as decisive of this case we forbear discussing other questions on which it is maintained that the ruling of the Circuit Court was correct.

*Judgment affirmed.*