LEHMAN v. CITY OF SAN DIEGO.

(Circuit Court of Appeals, Ninth Circuit. October 18, 1897.)

No. 307.

1. MUNICIPAL CORPORATIONS—AUTHORITY TO ISSUE BONDS.
   Act March 7. 1872. conferring upon the city of San Diego the power "to borrow money upon the faith and credit of the city," does not confer any power to issue negotiable bonds. 73 Fed. 105, affirmed.

2. SAME—METHOD OF ISSUING BONDS—BONA FIDE HOLDERS.
   A municipality having decided to issue its bonds, an ordinance was passed prescribing that the board of trustees should, by resolution, fix the amount of the bonds, and direct to whom and how they should be delivered. Doubts having arisen as to the validity of this ordinance, the legislature passed an act legalizing, ratifying, and confirming it. *Held,* that valid bonds could only be issued by a compliance with the legalized ordinance, and that bonds issued without the passage of such resolutions by the board of trustees were void, even in the hands of innocent purchasers. 73 Fed. 105, affirmed.

3. SAME.
Bonds which upon their face purport to have been issued in conformity with an act specified, but which in fact were not issued until after the repeal of said act, being antedated, so as to appear to have been issued prior to such repeal, and which were signed by persons as president and clerk who were not such officials at the date on which the bonds purport to have been issued, are void in the hands of bona fide holders.

In Error to the Circuit Court of the United States for the Southern District of California.

This was an action at law by A. Lehman against the city of San Diego to recover upon certain bonds purporting to have been issued by the defendant. The circuit court directed the jury to return a verdict for defendant (73 Fed. 105), and the plaintiff brought the case to this court on writ of error.

S. O. Houghton, for plaintiff in error.

H. E. Doolittle, City Atty., and T. L. Lewis, Dep. City Atty., for defendant in error.

Before GILBERT and MORROW, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge. This is an action brought by the plaintiff in error to recover the principal and interest alleged to be due and owing to him on four municipal bonds, numbered 150 to 153, inclusive, of $1,000 each, issued by the defendant in error, bearing date January 1, 1873, payable 20 years after date, to Frankenthal & Co., or the legal holder thereof; and also to recover the interest due on four other bonds issued by the defendant in error, numbered 146 to 149, inclusive, dated October 4, 1875, payable to W. W. Bowers, or the legal holder thereof. The plaintiff claims to be an innocent purchaser of said bonds and coupons. Upon the trial in the circuit court the judge instructed the jury, "as matter of law, that all of the bonds and coupons sued upon are void in the hands of the plaintiff, and you are therefore instructed to return a verdict for the defendant." It is claimed by the plaintiff that this instruction is erroneous.

Were the bonds and coupons sued upon issued without authority of law? The authority for their issue is claimed to be derived under and by virtue of the thirteenth subdivision of section 10 of the act of the legislature of the state of California approved March 7, 1872, which conferred upon the board of trustees of the city of San Diego the power "to borrow money upon the faith and credit of the city; but no loan shall be made without the consent to such loan of a majority of the real estate owners of the city residing therein previously obtained." St. Cal. 1871–72, pp. 285, 289. The bonds and coupons are negotiable instruments, and were issued for the sole purpose of assisting in carrying out a contract which was made between a "citizens' committee of forty" of the city of San Diego and Col. Thomas A. Scott, relative to the construction of the Texas & Pacific Railway to the city.

In Brenham v. Bank, 144 U. S. 173, 12 Sup. Ct. 559, the court passed upon and decided the principles of law which are directly

applicable to this case. There the bonds under consideration were issued by the city of Brenham, payable to bearer, under the assumed authority of an act of the state of Texas giving to the city council the power to borrow, for general purposes, not exceeding $15,000 on the credit of the city. The court held that the city had no authority to issue negotiable bonds, and that a bona fide holder of them could not recover against the city either on the bonds or their coupons. In the course of the opinion, the court said:

"The confining of the power in the present case to a borrowing of money for general purposes on the credit of the city limits it to the power to borrow money for ordinary governmental purposes, such as are generally carried out with revenues derived from taxation; and the presumption is that the grant of the power was intended to confer the right to borrow money in anticipation of the receipt of revenue taxes, and not to plunge the municipal corporation into a debt on which interest must be paid at the rate of ten per centum per annum, semiannually, for at least ten years. It is easy for the legislature to confer upon a municipality, when it is constitutional to do so, the power to issue negotiable bonds; and, under the well-settled rule that any doubt as to the existence of such power ought to be determined against its existence, it ought not to be held to exist in the present case."

The court reviewed all of the previous cases upon the subject, and declared that Rogers v. Burlington, 3 Wall. 654, and Mitchell v. Burlington, 4 Wall. 270, wherein a different doctrine had been announced, were overruled by the later cases of Police Jury v. Britton, 15 Wall. 566, 570, 572; Claiborne Co. v. Brooks, 111 U. S. 400, 406, 4 Sup. Ct. 489; Concord v. Robinson, 121 U. S. 165, 167, 7 Sup. Ct. 937; Kelley v. Milan, 127 U. S. 139, 150, 8 Sup. Ct. 1101; Norton v. Dyersburg, 127 U. S. 160, 175, 8 Sup. Ct. 1111; Young v. Clarendon Tp., 132 U. S. 340, 10 Sup. Ct. 107; Hill v. Memphis, 134 U. S. 198, 203, 10 Sup. Ct. 562; and Merrill v. Monticello, 138 U. S. 673, 686, 687, 11 Sup. Ct. 441,—and, at the close of the opinion, said:

"As there was no authority to issue the bonds, even a bona fide holder of them cannot have a right to recover upon them or their coupons."

In Ashuelot Nat. Bank of Keene v. School Dist. No. 7, Valley Co., 5 C. C. A. 468, 56 Fed. 197, 199, the circuit court of appeals for the Eighth circuit, in construing certain provisions of the statute of Nebraska (Laws 1869, pp. 115–120), which provided that "any school district shall have power and authority to borrow money to pay for the sites of schoolhouses, and to erect buildings thereon, and to furnish the same, by a vote of a majority of the qualified voters," and of the act of 1873 (Gen. St. 1873, p. 883), providing for the registering of all "school-district bonds voted and issued pursuant to" the act of 1869, followed the principles announced in Brenham v. Bank, supra, and held that the provisions of the statutes of Nebraska did not confer any authority to issue negotiable securities; and that such securities issued by the school districts were void, even in the hands of an innocent purchaser. See, also, Coffin v. Board of Com'rs, 6 C. C. A. 288, 57 Fed. 137, 141.

It is contended by the plaintiff in error that if the provision in the charter of the city of 1872 before quoted, with the consent of the majority of the real-estate owners, which was obtained, did not confer upon the trustees of the city the power to issue negotiable

bonds, the authority is found in the act of the legislature of the state of California approved February 24, 1874, entitled "An act to legalize certain bonds of the city of San Diego, and to provide for the payment of the interest thereon and for the redemption thereof." St. Cal. 1873-74, pp. 155-157.

Sections 1 and 2 of said act read as follows:

"Section 1. Charter Ordinance number seven, passed by the board of trustees of the city of San Diego, on the sixteenth day of September, A. D. eighteen hundred and seventy-two, and the election held in said city in accordance with the provisions of said ordinance, on the twenty-seventh day of September, A. D. eighteen hundred and seventy-two, are hereby legalized, ratified, confirmed, and declared valid, to all intents and purposes.

"Sec. 2. Charter Ordinance number twenty-two, passed and approved by the board of trustees of the said city of San Diego on the third day of February, A. D. eighteen hundred and seventy-three, is hereby legalized, ratified, confirmed, and declared valid, to all intents and purposes; and all bonds already issued, or that may hereafter be issued, under and in accordance with the provisions of said Ordinance number twenty-two, are hereby declared to be legal and valid obligations of and against said city, and the faith and credit of said city is hereby pledged for the prompt payment of the same annual interest of said bonds so issued, or to be issued, under the provisions of said Ordinance number twenty-two, and for the redemption thereof, according to the tenor and effect of said bonds, and the coupons thereto attached."

Ordinance No. 7, referred to in said act, provided for the holding of an election to determine whether or not the bonds should be issued, for the purpose of carrying out the agreement made by the citizens' committee with Scott, not to exceed the amount of $150,000, to bear date of the day of issuance, and to be made payable 20 years after date.

Section 1 of Ordinance No. 22 declares that the bonds shall be issued.

Section 2 provides:

"That said bonds be issued and bear date as of the first day of January, A. D. 1873, and be made payable at the office of the treasurer of said city in twenty years from and after said date, and to be redeemable at the option of the said board of trustees, or their successors in office, at any time after the expiration of three years from the said date of issuance."

Sections 4 and 5 read as follows:

"Sec. 4. That said bonds be issued (at the option of the said board of trustees) in denominations of not less than five hundred nor more than one thousand dollars, and to such person or persons and at such time or times as such board of trustees may, by resolution, direct.

"Sec. 5. That said bonds, and the coupons attached thereto, be signed by the president and the clerk of the said board of trustees, as such officers, and upon the signing of said bonds the corporate seal of said city shall be affixed to each bond, by the said clerk, and the said clerk shall then deliver said bonds thus signed and sealed to such person or persons and at such time or times as said board may, by resolution, direct."

There was no resolution of the board fixing the denomination of the bonds issued to Bowers, or directing to whom or when the bonds should be issued, as required by section 4 of Ordinance No. 22; and there is nothing in the record to show that section 5 was complied with in the delivery of the bonds.

The act of the legislature of 1874, which undertook to legalize, ratify, confirm, and declare valid all of the provisions of Ordinances

No. 7 and No. 22, did not attempt in any manner to change the terms and conditions as to the issuance of the bonds. The ordinances, as thus ratified, constituted the mode and the measure of the power of the board of trustees, and could not be departed from. This principle is clearly enunciated in McCoy v. Briant, 53 Cal. 247, where the same question was involved. There the court, after stating that the first question to be determined was whether the bonds issued to Bowers would be void in the hands of a bona fide holder for value, declared that the authority to issue the bonds was derived exclusively from ordinances numbered 7 and 22 of the trustees of the city, which were subsequently ratified and validated by the act of the legislature approved February 24, 1874. After quoting from the provisions of these ordinances as to the manner in which the bonds should be issued, and referring to the fact that no resolution of said board of trustees was ever passed authorizing said bonds to be issued to Bowers, or designating the denomination of the same, the court said:

"In this case, the ordinances, as ratified by the act of the legislature, prescribed definitely and precisely the mode, and the only mode, in which the bonds could be issued and delivered, to wit, by a resolution of the board of trustees directing when and to whom the bonds were to be issued and delivered. Nor can this requirement be regarded as merely directory, a violation of which would not impair the validity of the bonds. On the contrary, it was intended as a precaution against an abuse of its power by the board of trustees, and to prevent a fraudulent or unauthorized delivery by the clerk to a person not entitled to receive the bonds. Under the terms of the ordinance, no bond could be issued or delivered except upon a resolution of the board appearing upon its minutes or the record of its proceedings, thus furnishing a most important safeguard against fraud and an abuse of power. Every person dealing in the bonds is bound, at his peril, to inquire whether they were issued in the mode prescribed; and, as the mode is the measure of the power, the bonds would be void in the hands of a holder for value without actual notice, if issued in any other mode. We are therefore of opinion that the bonds in controversy would be void in the hands of a bona fide holder, and would not be a valid charge against the city."

It necessarily follows from the views above expressed that the bonds issued to Bowers were void for two reasons: (1) Because there was no power given by the charter of San Diego of 1872 to the board of trustees to issue them; (2) the ordinances of the city, as ratified by the act of the legislature of 1874, were not complied with.

With reference to the bonds and coupons issued to Frankenthal & Co., there was a resolution passed by the board of trustees authorizing the bonds to be issued to Frankenthal & Co., designating the denomination of the same and the time of their issue. These bonds bear date January 1, 1873, in pursuance of the resolution which was adopted authorizing their issuance; but the proofs show that they were not in fact issued until 1877, after the legislature of the state had passed an act, approved April 1, 1876, to reincorporate the city of San Diego, and to provide another charter for it. This act declared that the act "approved March 7, 1872, and all acts and parts of acts in conflict with any portion of this act, are hereby repealed." St. Cal. 1875–76, pp. 806, 815. It thus appears that the bonds which, upon their face, purport to have been issued "in conformity with an act of the legislature of the state of California, entitled 'An act to

83 F.—43

reincorporate the city of San Diego,' approved March 7, 1872," were not in fact issued until after that act had been repealed, and that the persons who signed the same as president and clerk were not such officers of the board of trustees at the date on which the bonds purport to have been issued. In the light of the facts, disclosed by the record, it is manifest that the officers who signed the bonds acted without authority of law. It is well settled that bona fide purchasers of municipal bonds must take the risk of the official character of those who execute them. An examination of the records of the board of trustees of the city of San Diego would have disclosed the fact that the officers of the board who signed the bonds bearing date January 1, 1873, were not officers of the board at that date, and would have discovered the fact that the bonds were antedated after the act of 1872 had been repealed.

In Anthony v. Jasper Co., 101 U. S. 693, 698, municipal bonds were signed and issued in October, 1872, upon a subscription made in March, 1872, to the stock of a railroad company, and bore date the day of the subscription. The presiding justice who signed the bonds did not become such until October, 1872. There, as here, it will be observed that the person who was in office when the bonds were actually signed signed them, but they were, as here, antedated to a day when he was not in office. In that case there was a false date inserted in the bonds, in order to avoid the effect of a registration act which took effect between the antedated date and the actual date of signing. In the present case the false date seems to have been inserted so as to comply with a former order of the previous board, and make it appear to the public that the bonds were signed, as the language on their face implies, in compliance with the provisions of the law of 1872, when in truth they were not signed until after that law had been repealed. The bonds in the Jasper Co. Case were held void. The court said:

"In order to recover in this case, it became necessary for the plaintiff to prove that the bonds from which the coupons sued on were cut had been executed according to law. He did prove that they were signed by the presiding justice and clerk of the court, and were sealed with the seal of the court. This, before the act of March 30, 1872, would have been enough, but after that more was necessary. The public can act only through its authorized agents, and it is not bound until all who are to participate in what is to be done have performed their respective duties. The authority of a public agent depends on the law as it is when he acts. He has only such powers as are specifically granted; and he cannot bind his principal under powers that have been taken away, by simply antedating his contracts. Under such circumstances, a false date is equivalent to a false signature; and the public, in the absence of any ratification of its own, is no more estopped by the one than it would be by the other. After the power of an agent of a private person has been revoked, he cannot bind his principal by simply dating back what he does. A retiring partner, after due notice of dissolution, cannot charge his firm for the payment of a negotiable promissory note, even in the hands of an innocent holder, by giving it a date within the period of the existence of the partnership. Antedating under such circumstances partakes of the character of a forgery, and is always open to inquiry, no matter who relies on it. The question is one of the authority of him who attempts to bind another. Every person who deals with or through an agent assumes all the risks of a lack of authority in the agent to do what he does. Negotiable paper is no more protected against this inquiry than any other. In Bayley v. Taber, 5 Mass. 285, it was held that when a statute provided that

promissory notes of a certain kind, made or issued after a certain day, should be utterly void, evidence was admissible on behalf of the makers to prove that the notes were issued after that day, although they bore a previous date."

In Coler v. Cleburne, 131 U. S. 162, 173, 9 Sup. Ct. 720, the bonds were not signed by an officer who was in office when they were signed, but by a person who was in the office on the antedated day on which they bore date. The court said that the principles declared in Anthony v. Jasper Co. were applicable to the changed state of facts, and, upon the authority of that case, held the bonds invalid.

We are of opinion that the instructions given to the jury in the present case were correct. The judgment of the circuit court is affirmed, with costs.