**BUHL INDEPENDENT SCHOOL DIST. NO. 3, IN TWIN FALLS COUNTY, IDAHO v. NEIGHBORS OF WOODCRAFT.**

(Circuit Court of Appeals, Ninth Circuit. May 7, 1923. Rehearing Denied June 5, 1923.)

No. 3949.

Estoppel ☞62(6)—District held estopped to deny recitals in bonds.

A school district, which by its proper officers, executed bonds, which at the time they bear date it was authorized to issue, and which it sold for full value, as against a bona fide purchaser for value, *held* estopped to deny recitals therein that all acts, conditions, and things required to be and to be done precedent to the issuance thereof, have been done and performed in due and lawful form.

Rudkin, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Southern Division of the District of Idaho; Frank S. Dietrich, Judge.

Action at law by the Neighbors of Woodcraft against Buhl Independent School District, No. 3, in Twin Falls County, Idaho. Judgment for plaintiff, and defendant brings error. Affirmed.

The defendant in error, the innocent holder for value of bonds of the Buhl Independent School District, of the par value of $78,000, recovered a judgment upon the coupons thereof. The bonds are a part of an issue of $125,000 of date July 1, 1919, sold by the school district to Keeler Bros., for $125,000, which sum was actually paid to the district. They are in the prescribed and legal form, and are executed and attested in all respects as required by law, by the officers of the district who held office on July 1, 1919, and who were still in office at the date of the sale and delivery of the bonds to Keeler Bros., the predecessor in interest of the plaintiff. It was shown in evidence that the people and taxpayers of the district were demanding more schoolrooms and better school facilities, that in response to that demand the school board approached George Keeler, of Keeler Bros., and discussed the matter with him in April or May, 1919, and that later he submitted a proposition to take and pay for $125,000 school district warrants for building and other school purposes, provided that the board should take the steps and adopt the proceedings and resolutions suggested by his attorneys.

The plaintiff in error attempted to show on the trial that many of the recitals in the bonds were false, that the bonds were not executed on July 1, 1919, as certified therein, and not until after September 1, 1919, the date when one of the two acts under which the bonds could be issued had by its own terms expired. The court below ruled that the plaintiff in error was estopped by the recitals in the bonds. Under the instruction of the court, the jury found a verdict for the defendant in error. In addition thereto it returned certain special verdicts, finding (1) that all the proceedings looking to the issuance of said bonds were taken, and the bonds were actually signed and delivered after October 1, 1919; (2) that the

bonds were not authorized at any meeting of the school board regularly held; (3) that the bonds were not issued to take up or refund warrants issued and outstanding on or prior to September 1, 1919; (4) that they were issued to take up warrants to be issued after September 1, 1919, to pay for the erection of a new school building; (5) that the question of the issuance of the bonds was never submitted to, or authorized or ratified by, a vote of the electors of the school district; (6) that the indebtedness represented by the bonds was in excess of the revenues of the district for the fiscal year during which they were issued, including all income and revenues levied, collected, provided for, or payable to the district upon any account. Under instructions from the court the jury rendered special verdicts: (1) That the defendant in error purchased the bonds in due course of business for a valuable consideration before maturity and without knowledge or reason to believe that the recitals and statements therein and thereon were untrue in any particular, and it is a holder in good faith and for value; (2) that the bonds were never actually registered.

Wood & Driscoll, of Boise, Idaho, for plaintiff in error.

Richards & Haga, J. L. Eberle, McKeen F. Morrow, all of Boise, Idaho, for defendant in error.

Before GILBERT and RUDKIN, Circuit Judges, and VAN FLEET, District Judge.

GILBERT, Circuit Judge (after stating the facts as above). The bonds recited that all the acts and conditions required by the Constitution and laws of the state of Idaho to exist and to happen and be done and performed precedent to and in the issuance of—

"this bond in order to constitute the same the valid and binding obligation of said school district do exist and have happened and been done and performed in regular and due form and time, and that the indebtedness for the fundment and payment of which this bond is issued was lawfully incurred only for the ordinary and necessary expenses of such school district, authorized by the Constitution and general laws of the state, and at the time it was incurred and of its fundment and payment hereby constituted the valid, binding, and subsisting obligation of said school district, and was of a character authorized by law to be funded; that the indebtedness of the school district is not increased by the issue hereof, and that the total indebtedness of said school district, including this bond, does not exceed any constitutional or statutory limitation."

Section 1, chapter 55, Session Laws of Idaho of 1919, gives authority to the board of trustees of a school district to issue bonds of the district—

"for the purpose of paying, redeeming, funding, refunding, purchasing and redeeming the outstanding indebtedness of their district whenever the same can be done to the profit or advantage of the district without the district incurring any additional indebtedness or liability exceeding in any year the income or revenue provided for such year."

And it provides that the bonds must be signed by the presiding officer of the board and attested by its secretary and sealed by the district, if it has a seal, and that the coupons must be signed and the bonds registered by the treasurer of the board. Section 2 provides:

"This act and the powers hereby conferred shall expire on the first day of September, 1919."

The Constitution of the state (article 8, § 3) provides that no school district may incur—

"any indebtedness, or liability in any manner, or for any purpose, exceeding in that year, the income and revenue provided for it for such year, without the assent of two-thirds of the qualified electors thereof, voting at an election to be held for that purpose."

The plaintiff in error contends that the bonds are void for the reason that they were issued after the act of 1919 had expired, and argues that had they been issued prior to the expiration of the act, they would still have been void for violation of its provisions. It makes no question of the authority of a line of decisions which hold that a municipal corporation or school district is by the recitals contained in its bonds estopped to deny that the bonds which it issued have been issued with the assent of the electors, if an election is requisite, and that all acts, conditions, and things required to be and to be done precedent to the issuance thereof have been done and performed in due and lawful form. Andes v. Ely, 158 U. S. 312, 15 Sup. Ct. 954, 39 L. Ed. 996; Waite v. Santa Cruz, 184 U. S. 302, 22 Sup. Ct. 327, 46 L. Ed. 552; Stanley County v. Coler, 190 U. S. 437, 23 Sup. Ct. 811, 47 L. Ed. 1126; San Antonio v. Mehaffy, 96 U. S. 312, 24 L. Ed. 816; Walnut v. Wade, 103 U. S. 683, 26 L. Ed. 526.

But it is said that the principle of those decisions has no application here for the reason, that the bonds contain no sufficient recital of the date of their issuance, and that it is not sufficient that they show the date of their execution as of July 1, 1919. The bonds contain, however, the recital that they are issued under and in conformity with the act of 1919, and, bearing as they do the date of execution as of July 1, 1919, we see no room to doubt that their issuance was prima facie within the time so limited by the act. It is said that there was no power in the officers to make the recitals, because at the time when the bonds were actually signed and were in fact issued, as found by the special verdict of the jury, the act authorizing the issuance thereof had expired. But it is well settled that, when bonds recite that they were issued on a date at which the district had authority to issue them, it is no defense to a bona fide purchaser that they were in fact issued at a later date, when authority to issue them had expired. County of Moultrie v. Savings Bank, 92 U. S. 631, 23 L. Ed. 631; Chickaming v. Carpenter, 106 U. S. 663, 1 Sup. Ct. 620, 27 L. Ed. 307. While there can be no estoppel in the way of ascertaining the existence of a law authorizing the district to issue bonds (Town of South Ottawa v. Perkins, 94 U. S. 267, 24 L. Ed. 154, and Wilkes County v. Coler, 180 U. S. 506, 21 Sup. Ct. 458, 45 L. Ed. 642), and no estoppel as to the existence of the facts which place the district in the class of those to whom authority is given to issue bonds, the recitals which are found in the bonds here in question are, we think, sufficient to estop the district to deny the existence of every fact which is made by law a condition precedent to the issuance of the bonds.

The plaintiff in error relies upon Anthony v. Jasper County, 101 U. S. 693, 25 L. Ed. 1005. In that case the agent who signed the bonds for the county antedated the same to a time several months prior to the date when he was appointed to the position which he assumed to occupy when he signed them. It was held that the pur-

chaser was chargeable with notice of the fact that the person who signed them was not an officer of the county at the time when the bonds were dated. Said the court:

"Antedating under such circumstances partakes of the character of a forgery, and is always open to inquiry, no matter who relies on it."

In short, the decision in that case has reference only to acts of agents who were not authorized to act at all, and it has no bearing upon the question of the force of recitals in an instrument executed by an officer who, if the recitals were true, was authorized to execute them.

The judgment is affirmed.

RUDKIN, Circuit Judge (dissenting). The question before us is this: May the trustees of a school district, without even the semblance of authority to issue bonds of the district, clothe themselves with that authority by simply forging a date? To so hold violates every known rule of the law of agency. According to the majority opinion, if authority to issue bonds existed on a false date inserted in the bonds, all further inquiry is foreclosed, and it is said that this is the established doctrine of the Supreme Court of the United States. It seems to me that this is an entire misapprehension and misapplication of the decisions of that court. The whole doctrine of estoppel by recitals has been thus stated:

"Where legislative authority has been given to a municipality, or to its officers, to subscribe for the stock of a railroad company, and to issue municipal bonds in payment, but only on some precedent condition, such as a popular vote favoring the subscription, and where it may be gathered from the legislative enactment that the officers of the municipality were invested with power to decide whether the condition precedent had been complied with, their recital that it has been, made in the bonds issued by them and held by a bona fide purchaser, is conclusive of the fact, and binding upon the municipality; for the recital is itself a decision of the fact by the appointed tribunal." Town of Coloma v. Eaves, 92 U. S. 484, 491, 23 L. Ed. 579.

In other words, the power to decide whether conditions precedent have been complied with is a mere incident to the power to issue bonds, and when the latter power is lacking the former cannot exist. It is said in the majority opinion:

"But it is well settled that when bonds recite that they were issued on a date at which the district had authority to issue them, it is no defense to a bona fide purchaser that they were in fact issued at a later date when authority to issue them had expired. County of Moultrie v. Savings Bank, 92 U. S. 631; Chickaming v. Carpenter, 106 U. S. 663."

The cases cited do not sustain this broad proposition. The Constitution of Illinois, which took effect July 2, 1870, ordained that no county, city, town, or township should ever become a subscriber to the capital stock of any railroad or private corporation or make donation to or loan its credit in aid of such corporation. In the County of Moultrie Case the Supreme Court held that this constitutional provision did not impair the obligation of existing contracts, and that townships might issue bonds after the adoption of the Constitution

in fulfillment of valid subscriptions made prior to the adoption, notwithstanding the constitutional inhibition to the contrary. In other words, the court held that the township officers had authority to issue the bonds when they were in fact issued, provided the subscription was made before the adoption of the Constitution, and a recital in the bonds that the subscription was so made was binding on the township in favor of a bona fide purchaser.

A statute in Michigan provided that, if any township voted railroad aid bonds, it should within 60 days after the question of aid was determined by a vote of the electors, issue coupon bonds for the amount so determined. In the Chickaming Case the Supreme Court held that this provision of the statute was merely directory, and that valid bonds might be issued after the expiration of the 60-day limit, saying:

"We have not been referred to any decisions by the courts of Michigan to the contrary, and, construing the statute for ourselves, we think that valid bonds may be issued after the time. This being so, the antedating does not invalidate the bonds."

The clear inference from this language is that, if there was no authority to issue the bonds after the expiration of the 60-day limit, the mere antedating could not save or validate them.

The two cases bearing the closest analogy to the case now under consideration are Anthony v. County of Jasper, 101 U. S. 693, 25 L. Ed. 1005, and Lehman v. City of San Diego, 83 Fed. 669, 27 C. C. A. 668, from this circuit. In the former case the bonds were given a false date to avoid the effect of a registration act which took effect before the bonds were signed or executed, and in the latter case the bonds were given a false date to avoid the effect of the repeal of a statute. In both cases the bonds were declared null and void. There is, of course, this difference between the cases: In the cases cited some of the officers who signed the bonds were not in office at the time the bonds bore date, and the court held that purchasers of municipal securities must always take the risk of the genuineness of the official signatures of those who executed the paper they buy, and that this includes, not only the genuineness of the signature itself, but the official character of him who executes it. Under this rule, it was apparent from the face of the bonds either that the person who signed them was not in office when the bonds were signed, or that the bonds were in fact signed at a time when they could have no validity under the law. But the courts did not rest their decisions upon this narrow ground, for in the Anthony Case, quoted in the Lehman Case, the court said:

"The public can act only through its authorized agents, and it is not bound until all who are to participate in what is to be done have performed their respective duties. The authority of a public agent depends on the law as it is when he acts. He has only such powers as are specifically granted; and he cannot bind his principal under powers that have been taken away, by simply antedating his contracts. Under such circumstances, a false date is equivalent to a false signature; and the public, in the absence of any ratification of its own, is no more estopped by the one than it would be by the other. After the power of an agent of a private person has been revoked, he cannot bind his principal by simply dating back what he

does. A retiring partner, after due notice of dissolution, cannot charge his firm for the payment of a negotiable promissory note, even in the hands of an innocent holder, by giving it a date within the period of the existence of the partnership. Antedating under such circumstances partakes of the character of a forgery, and is always open to inquiry, no matter who relies on it. The question is one of the authority of him who attempts to bind another. Every person who deals with or through an agent assumes all the risks of a lack of authority in the agent to do what he does. Negotiable paper is no more protected against this inquiry than any other. In Bayley v. Taber, 5 Mass. 285, it was held that when a statute provided that promissory notes of a certain kind, made or issued after a certain day, should be utterly void, evidence was admissible on behalf of the makers to prove that the notes were issued after that day, although they bore a previous date."

That this language had special reference to the false date is apparent from the language of the court in the later case of Coler v. Cleburne, 131 U. S. 162, 173, 9 Sup. Ct. 720, 724 (33 L. Ed. 146), where it is said:

"In the present case, the bonds were not signed by an officer who was in office when they were signed, but by a person who was in office on the antedated day on which they bore date. In the Jasper County Case there was a false date inserted in the bonds in order to avoid the effect of a registration act which took effect between the antedated date and the actual date of signing. In the present case, there was a false signature. But the principle declared in the Jasper County Case is equally applicable to the present case."

From this language it seems apparent that a false date, as well as a false signature, will invalidate bonds as against all the world.

Under the majority opinion the Legislature is powerless to take away from municipal officers authority to issue bonds. Notwithstanding the repeal of all statutes on the subject, the power to bind the public still remains. To such a doctrine I cannot subscribe. Repudiation is an ugly word at best, but falsehood and forgery are even worse. We are concerned with the law, however, and not with the example.

The judgment should be reversed.